IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

　　*Plaintiff*,

v.

MOHAMED ELSHINAWY,

　　*Defendant*.

Criminal No. ELH-16-0009

**MEMORANDUM OPINION**

Mohamed Elshinawy, a United States citizen of Egyptian descent, was arrested in Maryland on December 11, 2015, and indicted about a month later, on January 13, 2016.  ECF 19.  The Indictment, which contains four counts, charges defendant, *inter alia*, with conspiracy to provide and with providing material support, in the form of personnel, services (including means and methods of communication), and financial services, to a designated foreign terrorist organization, in violation of 18 U.S.C. §§ 2339B(a)(1); 2339B(d)(1)(A), (D), (E), and (F).  That foreign terrorist organization is ISIS (Islamic State of Iraq and al-Sham or the Islamic State of Iraq and Syria), also known as ISIL (Islamic State of Iraq and the Levant).  ECF 19.

In particular, Count One charges conspiracy from in or about February 2015 to December 11, 2015, and Count Two charges the substantive offense of providing material support.  In Count Three, Elshinawy is charged with the willful collection of funds, "directly and indirectly, with the knowledge that they were to be used, in full or in part, to carry out a terrorist act . . . .", in violation of 18 U.S.C. §§ 2339C(a)(1)(B); 2339C(a)(3).[1]  And, Count Four charges the

---

[1] As to Counts Two and Three, defendant is also charged with aiding and abetting under 18 U.S.C. § 2.

defendant with knowingly and willfully making materially false statements to agents of the Federal Bureau of Investigation ("FBI") in July 2015, in violation of 18 U.S.C. § 1001(a)(2).

Defendant has moved to dismiss the Indictment (ECF 51), supported by a memorandum. ECF 51-1 (collectively, "Motion to Dismiss"). In addition, he has filed a Motion to Sever Count Four of the Indictment (ECF 52), along with a memorandum. ECF 52-1 (collectively, "Motion to Sever"). The government has filed a consolidated opposition (ECF 66, "Opposition"), to which defendant has replied. ECF 79 ("Reply").[2]

The Court held a motions hearing on November 10, 2016, at which argument was presented concerning the Motion to Dismiss. Defendant submitted on the Motion to Sever. For the reasons that follow, I shall deny both motions.

## I.        Summary of Allegations

Count One, the conspiracy count,[3] alleges that defendant is a United States citizen of Egyptian descent. ECF 19, ¶ 2. Beginning in or about February 2015 and continuing until on or about December 11, 2015, defendant allegedly conspired with "Coconspirator #1" and others "to knowingly provide material support or resources" to ISIL. *Id.* ¶ 4. Coconspirator #1 is an Egyptian national who resides overseas and is defendant's childhood friend. *Id.* ¶ 3. Coconspirator #1 stated that he is a member of ISIL. ECF 19, ¶ 36.

The Indictment further alleges that on February 17, 2015, during a discussion with Coconspirator #1 through social media, defendant "pledged his allegiance to ISIL . . . [and] asked Coconspirator #1 to convey his message of loyalty to ISIL leadership . . . ." *Id.* ¶ 10. In

[2] This opinion does not address defendant's Motion To Suppress Illegally Obtained FISA Evidence And Request For Production Of The Government's FISA Application, Orders, And Related Materials. ECF 63. The government has responded in opposition (ECF 82), but the time to reply has not yet expired. Therefore, the Motion is not yet ripe.

[3] Count One contains 37 paragraphs and seven pages of text.

addition, defendant "committed himself to committing violent jihad."[4]   *Id.*   Defendant "acknowledged that committing [a terrorist] attack would be a crime in the United States."  *Id.* The Indictment also alleges that, as part of the conspiracy, defendant and others used "'pay as you go'" cellular phones.   ECF 19, ¶ 5.   And, the Indictment alleges that, as part of the conspiracy, defendant used financial accounts and services to transfer funds to the United States "from overseas . . . to conduct a terrorist attack . . . ."  *Id.* ¶ 6.

The defendant's brother allegedly resides in Saudi Arabia.  ECF 66 at 7.  In a discussion over social media on March 11, 2015, between defendant and an individual believed to be defendant's brother, defendant encouraged his brother to join ISIL and expressed, among other things, his own desire to "become a mujahideen . . . ."  ECF 19, ¶ 11.[5]

According to the Indictment, on March 23, 2015, defendant received, through a transfer of funds from a company headquartered overseas (the "Overseas Company"), the sum of approximately $1,500, which he deposited to his online financial account, to be used to conduct a terrorist attack on behalf of ISIL.  *Id.* ¶ 13.  Defendant purchased a new cellular phone a few days later, on March 28, 2015, to further his communications with Coconspirator #1 and other

---

[4] "Jihad" refers to "holy war," *United States v. Farhane*, 634 F.3d 127, 132 (2d Cir. 2011), "'undertaken as a sacred duty by Muslims.'"  *United States v. Kahn*, 461 F.3d 477, 483 n.1 (4th Cir. 2006) (citation omitted).  As Justice Douglas explained in his concurrence in *Clay v. United States*, 403 U.S. 698 (1971) (per curiam), jihad is "'a sanction against polytheism and must be suffered by all non-Muslims who reject Islam . . . .'"  *Id.* at 709 (citation omitted).  "'[I]t is also a form of punishment to be inflicted upon Islam's enemies and the renegades from the faith.'"  *Id.* (citation omitted); *see also American Freedom Defense Initiative v. King County*, No. C13-1804RAJ, 2014 WL 345245, at *7 (W.D. Wash. January 30, 2014) (defining "jihad").

[5] "Mujahideen" are "*jihad* warriors."  *Farhane*, 634 F.3d at 132.

ISIL operatives." *Id.* ¶ 14.  Defendant registered the phone on April 2, 2015, under the name "'Black Eyes,'" using the address "'earth planet, Aberdeen, Maryland' . . . ." *Id.* ¶ 15.[6]

According to the Indictment, defendant received another transfer of funds from the Overseas Company into his financial account on April 16, 2015, in the approximate sum of $1,000.  *Id.* ¶ 17.  Again, it was "to be used to conduct a terrorist attack on behalf of ISIL." *Id.*

During a conversation over social media on April 22, 2015, defendant and Coconspirator #1 allegedly discussed defendant's "plans to obtain or make some sort of explosive device." *Id.* ¶ 18.  Shortly thereafter, on April 25, 2015, Coconspirator #1 told defendant "to provide him with an unattributable phone number in order to enable covert communication with ISIL operatives." *Id.* ¶ 19.  Then, on April 27, 2015, defendant again encouraged an individual, believed to be his brother, to join ISIL.  *Id.* ¶ 20.

Defendant received another transfer of funds through the Overseas Company on May 1, 2015, in the sum of about $1,000, again to be used to conduct a terrorist attack on behalf of ISIL. *Id.* ¶ 21.  Defendant reiterated his commitment to ISIL during a discussion with Coconspirator #1 on May 2, 2015.  *Id.* ¶ 22.  Then, on May 14, 2015, defendant received a transfer of funds from the Overseas Company, in the approximate amount of $3,000.  *Id.* ¶ 23.  Elshinaway told his brother on May 25, 2015, of his desire to "die as a martyr." *Id.* ¶ 24.  Defendant received another transfer of funds on June 7, 2015, in the amount of $1,200, to be used to conduct a terrorist attack.  *Id.* ¶ 26.  On June 25, 2015, via social media, Coconspirator #1 attempted to recruit an individual to join ISIL.  *Id.* ¶ 27.  Then, on June 28, 2016, defendant received a wire transfer from an individual located in Egypt, in the approximate amount of $1,000.  *Id.* ¶ 28.

---

[6] In its Opposition, the government claims that on June 30, 2015, while at a Walmart in Baltimore County, Maryland, defendant purchased two "pay-as-you-go cell phones and two phone cards."  ECF 66 at 2.

On July 17, 2015, Elshinaway allegedly made several false statements to agents of the FBI.  *See* ECF 19, ¶ 29; *see also* ECF 66 at 2.  For example, defendant told agents of the FBI that he only received a total of $4,000 from an overseas ISIL operative.  ECF 19, ¶ 29.  During a second interview with FBI agents on July 20, 2016, defendant amended his earlier statement and claimed that he had received no more than $5,200 from an ISIL operative.  *Id.* ¶ 31.  In fact, he had received over $8,000.  *Id.*[7]

In its Opposition, the government asserts that a review of bank and business records indicate that the defendant spent at least $1,350 of the money in question to purchase communication devices, such as phones, calling cards, a laptop computer, a hotspot for internet access, and a virtual private network.  ECF 66 at 5.  About $3,000 was converted into cash and is not traceable.  And, a portion of the funds was used by defendant for personal expenses.  *Id.*

Further, the government maintains that, during the FBI interview on July 17, 2015, defendant consented to a search of his Dell and HP laptop computers.  *Id.* at 6.  However, forensic analysts were unable to obtain information from defendant's HP laptop because the hard drive had been damaged.  *Id.*  Moreover, as to the HP laptop, defendant used a thumb drive with a type of operating system that does not permit storage of information on the computer.  *Id.*

The government also alleges in its Opposition that a search of defendant's residence on December 11, 2015, disclosed a large box containing numerous newspaper articles reporting on ISIL, including a recent bombing and FBI terrorism investigations.  *Id.* at 10.  Although defendant had denied ever having seen photos of an attack on the Italian Consulate in Cairo,

---

[7] The government maintains that between March and June 2015, PayPal records establish that defendant concealed from the FBI at least $3,500 in ISIL-related funds that he received from the Overseas Company, by way of two PayPal accounts.  ECF 66 at 4.  In addition, defendant allegedly received $1,000 in an Egyptian wire transfer, for a total of at least $8,700 that defendant received from individuals allegedly associated with ISIL.  *Id.*

Egypt on July 11, 2015, forensic analysis of his Dell laptop revealed several pictures documenting damage to the Italian Consulate. ECF 66 at 6. Also, forensic analysis revealed that the defendant used multiple email accounts, in some instances utilizing pseudonyms. *Id.* at 6-7. And, "the login IP addresses for Coconspirator #1 . . . . resolved to proxy servers located in Europe and Africa, fixed locations in Turkey near the Iraq/Syria border, or locations inside of Iraq." *Id.* at 8.

## II.     The Material Support Statute

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA") "in an effort to eradicate fundraising in the United States for foreign terrorist organizations." *United States v. Warsame*, 537 F. Supp. 2d 1005, 1010 (D. Minn. 2008); *see* Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996). As the *Warsame* Court explained, 537 F. Supp. 2d at 1010, Congress recognized "the increasing sophistication of terrorist organizations, which often raise money for international terrorism under the guise of humanitarian or political causes[.]" Therefore, "Congress criminalized the provision of material support or resources to foreign terrorist organizations that are designated by the Secretary of State." *Id.*

Conspiracy to provide material support to terrorists became a crime in October of 2001. *United States v. Kahn*, 461 F. 3d 477, 489 (4th Cir. 2006). Until that time, the offense "was a substantive crime only." *Id.*

In 2001, Congress amended the definition of "material support or resources." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 11 (2010). It added to the statute the term "expert advice or assistance." *Id.* (citing Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("Patriot Act"), § 805(a)(2)(B), 115 Stat. 377). Then, in 2004, Congress again amended § 2339B as to the definition of "material

support or resources." *Holder*, 561 U.S. at 12 (citing Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), § 6603, 118 Stat. 3762-3764).   Among other things, Congress "clarified" the requisite "mental state necessary to violate § 2339B. . . ." *Holder*, 561 U.S. at 12.  It required "knowledge of the foreign group's designation as a terrorist organization" or knowledge of the group's "commission of terrorist acts."  *Id.*; *see also id.* at 16-17.   In addition Congress added "service" to the definition of "material support or resources" (§ 2339A(b)(1)), and it provided additional definitions of various terms.  *Id.* at 12-13.  Moreover, IRTPA "clarified the scope of the term 'personnel,'" as set forth in § 2339B(h).  *Id.* at 13.

In this case, Counts One and Two of the Indictment arise under 18 U.S.C. § 2339B, which was initially enacted as part of AEDPA.  *See*, *e.g.*, *United States v. Hammoud*, 381 F. 3d 316, 327 (4th Cir. 2004) (en banc), *vacated on other grounds*, 543 U.S. 1097 (2005), *reinstated in part*, 405 F. 3d 1034 (4th Cir. 2005).  In particular, § 2339B(a)(1) imposes criminal liability on a person who "knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so[.]"  In order to violate the law, "a person must have knowledge that the organization is a designated terrorist organization" or that it "has engaged or engages in terrorist activity…."  18 U.S.C. 2339B(a)(1).  However, to commit a violation of § 2339B, an individual need not have "specific intent to further the organization's terrorist activities."  *Holder*, 561 U.S. at 17.

Under § 2339B(g)(4), the term "material support or resources" is defined as set forth in 18 U.S.C. § 2339A(b)(1), as follows:

> [A]ny property, tangible or intangible, or service, including currency or monetary instrument or financial security, financial services, lodging, training, expert advice or assistance, safe houses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials[.]

Notably, § 2339(B) "does not criminalize mere membership in a designated foreign terrorist organization." *Holder*, 561 U.S. at 18.  Moreover, the statute "avoid[s] any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups." *Id.* at 36.  Under § 2339B(h), prosecution is limited, as follows:

> **(h) Provision of personnel.** – No person may be prosecuted under this section in connection with the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization.   Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.

In addition, § 2339B(i) protects a person's rights under the First Amendment.  It states:

> **(i) Rule of construction.**—Nothing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the United States.

As noted, Count Three charges the defendant with a violation of 18 U.S.C. § 2339C(a)(1)(B) and (a)(3).  Enacted in 2002, 18 U.S.C. § 2339C(a)(1)(B) imposes criminal liability as follows:  "Whoever . . . by any means, directly or indirectly, unlawfully and willfully provides or collects funds with the intention that such funds be used, or with the knowledge that such funds are to be used, in full or in part, in order to carry out -- . . . (B) any other act intended to cause death or serious bodily injury to a civilian . . . shall be punished as prescribed in subsection (d)(1)."

The term "provides" includes "giving, donating, and transmitting" funds, § 2339C(e)(4), and the term "collects" "includes raising and receiving" funds.  18 U.S.C. § 2339C(e)(5). Section 2339C "does not require a showing of specific intent that the defendant acted to further the organization's terrorist activities or that [he] intended to aid or encourage the particular

attack. . . ." *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 47 (D.D.C. 2010) (citing *Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.*, 291 F.3d 1000, 1023-24 (7th Cir. 2002)).   Under § 2339C, "[m]ere knowledge that the funds provided and collected would be used to carry out the predicate act is enough."  *Wultz,* 755 F. Supp. 2d at 47.  Thus, "it shall not be necessary that the funds [collected] were actually used to carry out a predicate act" in order to violate the statute.  18 U.S.C. § 2339C(a)(3).  *See, e.g., Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 588 (E.D.N.Y. 2005) (denying motion to dismiss where the plaintiffs alleged that a financial institution knew that funds received as deposits and transmitted to various organizations "were to be used for conducting acts of international terrorism").

### III. Overview of Defendant's Contentions

Defendant urges dismissal of the Indictment for three primary reasons:  "vagueness, violations of the First Amendment, and facial insufficiency."  ECF 51 at 1.[8]

### A.  Vagueness

As to Counts One and Two of the Indictment, defendant claims that, as applied to him, 18 U.S.C. § 2339B is "unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment . . . ."  ECF 51-1 at 1; *see also* ECF 79 at 2-3.  In his view, the prosecution for material support in the form of personnel, services (including means and methods of communication), and financial services deprives him of "fair notice of the prohibited conduct and invites arbitrary enforcement by the Government."  ECF 51-1 at 6; *see id.* at 9, 11.

To illustrate, defendant argues that he "never pledged a formal oath of allegiance to ISIL or to any representative of the terrorist organization."  ECF 79 at 4.  Elshinawy also maintains

---

[8] At the motions hearing, defense counsel indicated that, with respect to the charge in Count Three under § 2339C, defendant has not lodged a constitutional challenge based on vagueness or the First Amendment.

that "[a]n oath of allegiance to a foreign terrorist organization, without more, is not enough" to warrant prosecution within the meaning of the term "personnel." ECF 51-1 at 7.  In his view, the term "'personnel'" is "unclear in its application to Mr. Elshinawy because he could not have been on notice that merely communicating with a childhood friend, who similarly identified with ISIL's cause, and informally pledging allegiance to the terrorist organization would constitute criminal conduct under the statute."  ECF 79 at 4.  Similarly, defendant argues that an allegation that he "merely communicated" with another to assist a terrorist group does not constitute providing "personnel" to a foreign terrorist organization, "unless the defendant did so at the direction or control of the organization." ECF 51-1 at 8.

According to Mr. Elshinawy, the "indictment in this case alleges conduct best described as speech, which Mr. Elshinawy made independent—and without direction—from ISIL or anyone else." *Id.* at 9.  Therefore, defendant argues that he is being prosecuted for "providing 'personnel' in the form of mere *conversations* . . . with non-ISIL affiliated individuals.[1]"  *Id.* (emphasis in original).

In addition, defendant complains that the term "'services'" is vague as applied to him. ECF 79 at 5.  He insists that the government has "overreached" in its prosecution of him "for conspiring to provide and knowingly providing material support or resources in the form of 'services (including means and methods of communication).'"  ECF 51-1 at 10.  In defendant's view, "the indictment does not establish that Mr. Elshinawy's conduct was at the direction of ISIL.   More concerning, the indictment does not even allege that Mr. Elshinawy used the [cellphone that he purchased] to communicate with *anyone*, much less ISIL operatives." *Id.* (emphasis in original).  In this regard, defendant points out that the Indictment does not state that he ever provided Conconspirator #1 with an unattributable phone number, although he was

directed to do so.  *Id.* 10-11.  He asserts that the "services" component of the statute does not criminalize the mere use of a cell phone.  *Id.* at 11.

And, defendant insists that the term "'financial services' is so broad that it fails to put Mr. Elshinawy on notice that merely *receiving* Paypal and wire transfers from purported ISIL operatives would be sufficient to violate the statute."  ECF 79 at 7 (emphasis in original); *see also* ECF 51-1 at 11.  He adds:  "This is particularly true because 18 U.S.C. § 2339C prohibits that very conduct."  ECF 79 at 7.  He claims that, in contrast to § 2339C, § 2339B "is not worded to encompass passive conduct like the 'collecting' or 'receiving' of funds."  ECF 51-1 at 11.

## B.  First Amendment

Defendant asserts that, as applied to him, Counts One and Two of the Indictment "run[] afoul of the free speech guarantee of the First Amendment."  ECF 51-1 at 1; *see also* ECF 79 at 7.  In his view, as applied to him, his conduct amounts to speech, which cannot be criminalized. ECF 51-1 at 12.  He points out that the Indictment describes twenty-eight particular acts, seventeen of which are mere "discussions" between defendant and Coconspirator #1, defendant and his brother, or between defendant and Coconspirator #1 and another unidentified associate. ECF 51-1 at 2-3; *see also* ECF 79 at 7.

## C.  Lack of Specificity

Pursuant to Fed. R. Crim. P. 12(b)(3)(B)(iii), defendant moves to dismiss all four counts, claiming a "lack [of] specificity regarding the nature of the charges . . . ."  ECF 51-1 at 1; *id.* at 13.  He contends that "the allegations in support of the charges lack the detail required to put Mr. Elshinawy on notice concerning those alleged actions that constitute a violation of federal law", as required by Fed. R. Crim. P. 7(c)(1).  ECF 51-1 at 14; *see also* ECF 51 at 1.  This includes, according to defendant, a lack of specificity as to "the precise material support he allegedly

conspired and attempted to provide; the individuals with whom he conspired; the nature of their alleged connection to [ISIL]; and the alleged terrorist attack Mr. Elshinawy collected funds to carry out." ECF 51-1 at 1. In defendant's view, "[t]he absence of this information renders the indictment fatally defective . . . ." *Id.*

In support of this contention, defendant also points to "omissions" in the Indictment. ECF 79 at 1. He asserts, *inter alia*, that the Indictment fails to allege that he ever 1) attempted to join ISIL; 2) purchased weapons or explosives; 3) underwent training in preparation for an attack; 4) communicated directly with representatives of ISIL; or 5) recruited others to join in an attack against the United States. *Id.* Although the Indictment recounts six transfers of funds that defendant received, either from the "Overseas Company" or an "individual located in Egypt," defendant points out that the Indictment "does not describe any purchases that Mr. Elshinawy made with the funds in furtherance of any alleged terrorist attack." ECF 51-1 at 3. Rather, it merely describes the purchase of a "pay as you go" cell phone, registered under a false name, "without specifying the source of funds from which the purchase was made." *Id.*

According to defendant, the Indictment is the product of governmental "overreach." *See*, *e.g.*, ECF 79 at 6. He insists that the Indictment does not contain any specific facts in support of the allegation that he "worked under ISIL or any other terrorist organization's direct control . . . . The indictment merely states that Mr. Elshinawy 'pledged allegiance' to ISIL . . . and received electronic transfers of funds . . . ." ECF 51-1 at 15. However, because "independent advocacy" is not criminalized by the statute, defendant argues that the failure of the Indictment "to specify whether Mr. Elshinawy's pledge was made at the direction of ISIL . . . is critical." *Id.*

Defendant also claims that the Indictment fails to allege facts in support of the "services" component of § 2339B. ECF 51-1 at 16. For example, the Indictment does not allege that

defendant "provided a cell phone or any other form of communication to ISIL or its operatives." *Id.* Nor are there any facts in the Indictment, according to the defendant, that he provided any funding to anyone, including ISIL. Rather, the Indictment merely alleges that defendant received funds, which does not support a charge under the statute, according to defendant. *Id.* at 16.

Similarly, defendant argues that Count Three, charging a violation of 18 U.S.C. § 2339C(a)(1)(B), which prohibits the financing of terrorism, fails for lack of specificity. ECF 51-1 at 16. Defendant complains that Count Three is defective because it "fails to set forth *facts* that Mr. Elshinawy received the funds with the intent to carry out *any* predicate terrorist act, or that the funds were actually used for the purpose of carrying out a terrorist act." *Id.* at 17. (emphasis in original).

And, defendant maintains that the false statement charge in Count Four is defective for lack of specificity. *Id.* He asserts, *id.*: "It is unclear from the indictment whether the conduct which serves as the basis for this offense is limited to the two specific acts described, occurring on July 17 and July 20, 2015, or whether the Government is relying on additional allegedly false statements not described." He adds, that the Indictment "fails to specify the precise false, fictitious, or fraudulent nature of the statement . . . ." *Id.* at 18.

### D. Severance

Defendant seeks to sever Count Four of the Indictment, pursuant to Fed. R. Crim. P. 8(a). ECF 52. As noted, Count Four charges Mr. Elshinawy with knowingly and willfully providing false, fictitious, and fraudulent statements to FBI agents, allegedly in an effort to "'conceal[] the full extent of his criminal conduct with ISIL.'" ECF 52-1 at 2 (alteration in original). Defendant observes that Count Four is based on events of July 17, 2015 and July 20, 2015, "during which Mr. Elshinawy allegedly told FBI agents that he received a sum of money from an overseas ISIL

operative that was less than the true amount.[1]"  *Id.*  He asserts:  "The false statement charge in Count Four is not of the same or similar character as the other counts in the indictment, nor is it connected to or based on the same acts or transactions which give rise to the other counts."  *Id.* Thus, defendant argues: "Joinder of Count Four with the other counts in the indictment results in unfair prejudice to Mr. Elshinawy because the facts upon which the material support charge is based are extraneous to the alleged criminal enterprise."  ECF 52-1 at 2-3.

## IV. Discussion

### A.  Motion to Dismiss

#### 1.  Vagueness

Defendant attacks Counts One and Two of the Indictment, claiming that, as applied to him, the prosecution for conspiring to provide and knowingly providing material support or resources to ISIL, in the form of personnel, services (including means and methods of communication), and financial services, is unconstitutionally vague, in violation of the Due Process Clause of the Fifth Amendment.   He argues that, as to Counts One and Two, he has not been provided with "fair notice of the prohibited conduct . . . ."  ECF 51-1 at 6.

The Fifth Amendment provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law."  The Supreme Court recently reiterated in *Johnson v. United States*, 576 U.S. ____, 135 S. Ct. 2551, 2556 (2015): "Our cases establish that the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement."  The *Johnson* Court added, *id.* at 2556-57:  "The prohibition of vagueness in criminal statutes 'is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law[.]'"  (Quoting

*Connolly v. General Constr. Co.*, 269 U.S. 385, 391 (1926)).  Indeed, "a statute that flouts [this principle] 'violates the first essential of due process.'"  *Johnson*, 135 S. Ct. at 2557 (citation omitted).  And, the *Johnson* Court made clear that its "*holdings* squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Id.* at 2561 (emphasis in *Johnson*); *see also Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983).

In order for a conviction to comport with due process, the statute at issue must "provide a person of ordinary intelligence fair notice of what is prohibited" and must not be "so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008); *see also Doe v. Cooper*, 842 F.3d 833, 842 (4th Cir. 2016); *Martin v. Lloyd*, 700 F.3d 132, 135 (4th Cir. 2012).  Put another way, the vagueness doctrine "'requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'"  *United States v. Sun*, 278 F.3d 302, 309 (4th Cir. 2002) (citation omitted).

In assessing whether a statute is vague, "a court must consider both whether it provides notice to the public and whether it adequately curtails arbitrary enforcement." *Hammoud*, 381 F.3d at 330 (addressing pre-amended version of § 2339B and concluding that § 2339B "easily satisfies this standard").  However, "a scienter requirement may mitigate a law's vagueness . . . ." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982); *see Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 526 (1994); *United States v. Lindh*, 212 F. Supp. 2d 541, 573 (E.D. Va. 2002).

A determination of vagueness must be considered "as applied to the particular facts at issue, for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Holder*, 561 U.S. at 18-19 (quoting *Village of Hoffman Estates, Inc.*, 455 U.S. at 495) (alternation in *Holder*).  Notably, the overbreadth doctrine "'attenuates as the otherwise unprotected behavior that [a statute] forbids . . . moves from "pure speech" toward conduct.'"  *Virginia v. Hicks*, 539 U.S. 113, 124 (2003) (citation omitted).

The parties seem to agree that *Holder*, 561 U.S. 1, is the leading case with respect to the constitutionality of the material support statute.  *Holder*, a civil action, involved a challenge to the constitutionality of § 2339B, lodged by several plaintiffs.  *Id.* at 10.  Plaintiffs wanted to provide support for humanitarian and political activities of two organizations, both of which had committed terrorist acts.  *Id.* at 14-15.  One ("PKK") aimed to establish an independent Kurdish State in southeastern Turkey, and the other ("LTTE") sought to create an independent Tamil State in Sri Lanka.  *Id.* at 9.  Among other things, the plaintiffs sought to train members of the LTTE to advocate for the rights of Tamils living in Sri Lanka, and to train members of PKK to advocate for Kurds living in Turkey.  *Id.* at 14-15.

The plaintiffs claimed that the material support statute is unconstitutionally vague (*id.* at 11, 14), in violation of the Due Process Clause of the Fifth Amendment.  They also argued that the statute infringed their rights to freedom of speech and freedom of association, in violation of the First Amendment. *Id.* at 8; *see also id.* at 14.  As applied to the plaintiffs, the Supreme Court rejected both challenges.

To be sure, the Court recognized that, "when a statute 'interferes with the right of free speech or of association, a more stringent vagueness test should apply.'"  *Holder*, 561 U.S. at 19

16

(citation omitted).   Nevertheless, it also acknowledged that "'perfect clarity and precise guidance have never been required . . . .'"   *Id.* (citation omitted).   Construing "service" and "personnel," among other statutory terms, the Court observed that they do "not require . . . untethered, subjective judgments."   *Id.* at 21.   To the contrary, the Court pointed out that, through amendments, Congress "took care to add narrowing definitions to the material – support statute," which have "increased the clarity of the statute's terms."   *Id.*

With respect to "personnel," the Court observed that "Congress enacted a limiting definition . . . that answers plaintiffs' vagueness concerns."   *Id.* at 23.   The Court made clear that "'personnel' does not cover *independent* advocacy[.]"   *Id.* (Emphasis in *Holder*).

As to "service," the Court said, *id.* at 23-24 (emphasis in *Holder*):

"[Service] similarly refers to concerted activity, not independent advocacy . . . . The statute prohibits providing a service "*to* a foreign terrorist organization." . . . The use of the word "to" indicates a connection between the service and the foreign group. We think a person of ordinary intelligence would understand that independently advocating for a cause is different from providing a service to a group that is advocating for that cause.

Moreover, if independent activity in support of a terrorist group could be characterized as a "service," the statute's specific exclusion of independent activity in the definition of "personnel" would not make sense. Congress would not have prohibited under "service" what it specifically exempted from prohibition under "personnel." The other types of material support listed in the statute, including "lodging," "weapons," "explosives," and "transportation," . . . are not forms of support that could be provided independently of a foreign terrorist organization. We interpret "service" along the same lines…. Thus, … a person of ordinary intelligence would understand the term "service" to cover advocacy performed in coordination with, or at the direction of, a foreign terrorist organization.

Several other appellate court decisions are also helpful to the analysis of defendant's vagueness claim.

In *Hammoud*, *supra*, 381 F.3d 316, the Fourth Circuit rejected a vagueness challenge to the pre-amendment version of § 2339B with regard to currency.   *Id.* at 330.   It reasoned that the

term "material support" is not vague because it "is specifically defined as a number of enumerated actions." *Id.*  That same rationale applies here.

The case of *United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011), is also instructive. Farhane, a licensed physician, also known as Rafiq Sabir, and his co-defendant, Tarik Shah, met on a number of occasions with an undercover FBI agent posing as an al Qaeda recruiter.  *Id.* at 132.   During those meetings, Shah offered to travel abroad to provide terrorist training to al Qaeda combatants, while Sabir offered to meet with mujahideen overseas and to provide medical assistance to any wounded fighters.  *Id.* at 132-33.   Subsequently, both Sabir and Shah pledged their allegiance to al Qaeda and promised to serve as soldiers of Islam. *Id.*  Both defendants were subsequently charged with conspiring to provide, providing, and attempting to provide, material support to al Qaeda in the form of personnel, training, and expert advice and assistance, in violation of § 2339B.  *Id.* at 132.   Shah subsequently plead guilty to conspiracy; Sabir went to trial and was convicted of both charges.  *Id*. at 132-34.

On appeal, Sabir argued, *inter alia*, an as-applied due process challenge to § 2339B, alleging that the terms "training," "personnel," and "expert advice and assistance" were "inherently too vague to provide the notice and direction required by due process."  *Id.* at 140. The Second Circuit rejected the claim, concluding that the Supreme Court's opinion in *Holder* foreclosed "[s]uch a general complaint" and that Sabir's more specific factual challenges were "equally meritless." *Id.*

With regard to the term "personnel," the Second Circuit relied on § 2339B(h), stating, *id.* at 140-141:

> The provision of personnel is prohibited by § 2339B only when an individual knowingly provides, attempts to provide, or conspires to provide a foreign terrorist organization with one or more individuals, including himself, "to work under that terrorist organization's direction or control or to organize, manage,

supervise, or otherwise direct [its] operation." 18 U.S.C. § 2339B(h). … Sabir's offer to serve as an on-call doctor for the organization, standing ready to treat wounded *mujahideen* in Saudi Arabia, falls squarely within the core of this prohibition, defeating any suggestion either that he lacked notice that his conduct was unlawful or that the statute was enforced arbitrarily with respect to him. … In offering this support for al Qaeda, Sabir did not simply honor his Hippocratic oath. He swore a further oath of allegiance to al Qaeda, making clear that his treatment of wounded *mujahideen* would be provided not as an independent physician but as "one of the soldiers of Islam," duty bound to obey al Qaeda's leaders, … and to protect his fellow "brothers on the path of *Jihad*" and "on the path of al Qaeda." No reasonable person with a common understanding of al Qaeda's murderous objectives could doubt that such material support fell squarely within the prohibitions of § 2339B. (Emphasis in original).

*United States v. Augustin*, 661 F.3d 1105 (11th Cir. 2011) (per curiam), also provides guidance. There, the court upheld convictions of several defendants under § 2339B for conspiracy to provide material support to al Qaeda, in the form of personnel. *Id.* at 1110, 1117-22. Among other things, three defendants challenged the sufficiency of the evidence to support their convictions. *Id.* at 1110-11. The court found the evidence sufficient to sustain the convictions, based on an oath ceremony, in which a plot to bomb an FBI building was disclosed, coupled with the defendants' subsequent participation in recording images of various federal buildings. *Id.* at 1120-21.

The Eleventh Circuit was of the view that, as to two of the defendants, the violation of § 2339B "turn[ed] on what they did, rather than what they said." *Id.* at 1120. The court concluded that, based on the defendants' "volunteering . . . their service to Al Qaeda", it was "sufficient for a jury to deem it material support in the form of personnel . . . ." *Id.* Moreover, the court rejected defendants' claim that "they did not really take the oath." *Id.* It said, *id.*: "[W]e do not find the inadequacies or hesitations in the recitation of the oath to inoculate these defendants from the jury verdict." Rather, the defendants' "participation in the ceremony . . . and their resulting awareness of the plot . . . rather than the particular words

uttered . . . is sufficient evidence supplying knowledge and intent. . . ."  *Id.*; *see also*, *e.g.*, *United States v. Marzook*, 383 F. Supp. 2d 1056, 1066 (N.D. Ill. 2005) (denying vagueness challenge as to recruiting, delivering money, and scouting locations for Hamas attacks).

These cases readily lead me to conclude that defendant's claims of impermissible vagueness are specious.  The statute, as applied to defendant, satisfies the Due Process Clause.

As to the term "personnel," the term "does not extend to independent actors.  Rather, it describes . . . employee-like operatives who serve the designated group and work at its command or . . . who provide themselves to serve the organization.[]"  *Lindh*, 212 F. Supp. 2d at 572.  Nor is there merit to the alleged vagueness of the terms "services (including means and methods of communication)" and "financial services," as applied in this case.  The conduct that is prohibited is articulated in the statute with the requisite definiteness to assure that an ordinary person understands what is barred by law.  *See United States v. Arch Trading Co.*, 987 F.2d 1087, 1094 (4th Cir. 1993) (rejecting vagueness challenge to International Economic Emergency Powers Act).

### 2. The First Amendment

Defendant contends that, as applied to him, the charges under § 2339B violate the First Amendment.  ECF 51-1.  As noted, he argues that the material support charges "in the form of 'personnel' . . . represent speech."  ECF 51-1 at 12.  In his Reply, defendant adds that the material support statute "infringes on" his First Amendment rights of free speech and association.  ECF 79 at 2.  He states, *id.* at 8:  "At most, the allegations in the Indictment reflect Mr. Elshinawy's independent interest or infatuation with ISIL's cause and its broader ideology.  While Mr. Elshinawy's views may be unpopular and even abhorrent, the First Amendment

protects Mr. Elshinawy's right to associate with unpopular groups for the purpose of engaging in protected speech, as free speech and association are closely linked."[9]

Elshinaway insists that the Indictment criminalizes his speech.  He reiterates in his Reply that, "of the 28 particular acts described in the Indictment, 17 are mere discussions" involving the defendant.  ECF 79 at 7.

Of import here, 18 U.S.C. § 2339B(h) expressly provides:  "Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control." Moreover, the statute clearly states:  "Nothing in this Section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the United States."  18 U.S.C. § 2339B(i).  It is also noteworthy that the definition of the term "material support or resources" includes specific examples of the types of service that constitute material support, such as personnel, financial services, and training.  18 U.S.C. § 2339A(b); 18 U.S.C. § 2339B(g)(4).

Defendant's assertion that the Indictment violates his rights under the First Amendment distorts the allegations and misapprehends the statute.  As the Supreme Court noted in *Holder*, 561 U.S. at 35, "[t]he material-support statute is, on its face, a preventive measure–it criminalizes not terrorist attacks themselves, but aid that makes the attacks more likely to occur." The *Holder* Court made clear that Congress did not "suppress ideas or opinions in the form of

---

[9] Even assuming, *arguendo*, that support in the form of personnel constituted speech, and that defendant's First Amendment rights were infringed, this argument would be unavailing as to the form of support by way of services and financial services.  In his Motion to Dismiss, defendant did not address the implication of a successful challenge only as to support in the form of "personnel."  In any event, I need not address that issue, because I reject the defendant's free speech challenge.

'pure political speech.'"   561 U.S. at 26.   Nor do the terms "personnel" or "service" criminalize "*independent* advocacy" or free association.   *Id.* at 23 (emphasis in *Holder*).

To the contrary, said the Court, the plaintiffs "may say anything they wish on any topic. They may speak and write freely . . . ."   *Id.* at 25-26.   And, of significance here, the Court also said, *id.* at 26:   "Congress has prohibited 'material support,' which most often does not take the form of speech at all.   And when it does, the statute is carefully drawn to cover only a narrow category of speech to, under the direction of, or in coordination with foreign groups that the speaker knows to be terrorist organizations.[1]"

Further, the Court underscored that "Congress has avoided any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups."   *Id.* at 36.   According to the Court, Congress "displayed a careful balancing of interests in creating limited exceptions to the ban on material support.   The definition of material support, for example, excludes medicine and religious materials. *See* § 2339A(b)(1)."   *Id.*

Chief Justice Roberts, writing for the majority in *Holder*, concluded that, in the "considered judgment of Congress," providing "even seemingly benign support . . . bolsters" terrorist activities.   *Id.*   And, the Court held that providing the "forms of support that plaintiffs seek to provide" to the foreign terrorist groups did not violate their freedom of speech.   *Id.* at 39. Moreover, the "First Amendment's guarantee of associational freedom is no license to supply terrorist organizations with resources or material support in any form . . . . Those who choose to furnish such material support to terrorists cannot hide or shield their conduct behind the First Amendment."   *Lindh*, 212 F. Supp. 2d at 570.

Here, the allegations in the Indictment include "more than just an expression of support during a conversation over social media."   ECF 66 at 25.   I agree with the government that the

allegations "involve the defendant's *conduct* . . . ." *Id.* at 27 (emphasis in original).  As noted, defendant claims, *inter alia*, that he "never pledged a formal oath of allegiance to ISIL . . . ." ECF 79 at 4.  Moreover, defendant argues that he did not pledge his allegiance to a recruiter of a terrorist organization, as in *Farhane*, 634 F.3d 127 at 133.  ECF 79 at 4.  Rather, he claims he merely communicated informally with a childhood friend about his support for ISIS.  *Id.*  These assertions are contrary to the allegations in the Indictment.  The government has specifically alleged that the defendant asked Coconspirator #1 "to convey his message of loyalty to ISIL leadership . . . ."  ECF 19, ¶ 10.  In any event, as *Augustin* established, 661 F.3d at 1120, a formal oath is not required; a defendant is not exonerated based on "inadequacies or hesitations in the recitation of the oath . . . ."  Moreover, defendant's contentions are tantamount to a defense at trial; they are not a basis for dismissal of the case.

In sum, the government has not charged Elshinawy merely for expressing to a childhood friend his support for ISIL.  To the extent that defendant provided statements of support for ISIS, the statements cannot be considered in isolation, as defendant seems to urge.  They must be considered along with defendant's conduct.

### 3. Notice and Specificity

Defendant argues, as to all four counts, that the Indictment is fatally deficient because of a lack of specificity, thereby depriving him of notice of the charges.

An indictment implicates a defendant's constitutional due process right to reasonable notice of the charges.  *See, e.g.*, *Stroud v. Polk*, 466 F.3d 291, 296 (4th Cir. 2006).  An indictment is defective if it fails to apprise the defendant, with reasonable certainty, of the accusation.  *Russell v. United States*, 369 U.S. 749, 765 (1962).  A motion to dismiss an indictment "'tests whether the indictment sufficiently charges the offense set forth against

defendant.'" *Lindh*, 212 F. Supp. 2d at 575 (quoting *United States v. Brandon*, 150 F. Supp. 2d 883, 884 (E.D. Va. 2001)).   To be valid, "'[a]n indictment must contain the elements of the offense charged'" and "'fairly inform a defendant of the charge[.]'" *United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009) (citations omitted); *accord Hamling v. United States*, 418 U.S. 87, 117 (1974); *see United States v. Janati*, 374 F.3d 263, 271 (4th Cir. 2004); *United States v. Williams*, 152 F.3d 294, 299 (4th Cir. 1998).

Fed. R. Crim. P. 7(c)(1) governs the required content and form of an indictment. It provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ."   Ordinarily, an indictment that tracks the statutory language is constitutionally sufficient if "'accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense' . . . with which he is charged." *Hamling*, 418 U.S. at 117-18 (citation omitted). "More specifically, an indictment is legally sufficient (1) if it alleges the essential elements of the offense, that is, it fairly informs the accused of what he is to defend; and (2) if the allegations will enable the accused to plead an acquittal or conviction to bar a future prosecution for the same offense." *United States v. Rendelman*, 641 F.3d 36, 44 (4th Cir. 2011).

The requirement that an indictment include all elements of an offense derives from the Fifth Amendment. *United States v. Hooker*, 841 F.2d 1225, 1230 (4th Cir. 1988).   The Fifth Amendment provides, in part: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury[.]"   The notice requirement also derives from the Sixth Amendment, which states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." *See Hooker*, 841 F.2d at 1230; *see also Russell*, 369 U.S. at 763.   Notably, an indictment must

also enable the defendant to plead double jeopardy in the event of a subsequent prosecution for a similar offense. *Russell*, 369 U.S. at 764; *Williams*, 152 F.3d at 299.

Accordingly, "for an indictment to fulfill the functions of notifying the defendant of the charges against him and of assuring that he is tried on the matters considered by the grand jury, the indictment must state some fact specific enough to describe a particular criminal act, rather than a type of crime." *United States v. Pirro*, 212 F.3d 86, 92-93 (2d Cir. 2000). The factual particularity must "'ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury.'" *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (citation omitted). And, "[i]f the indictment does not contain every essential element of the offense, it is invalid; and, a bill of particulars cannot cure the defect." *United States v. Loayza*, 107 F.3d 257, 260 (4th Cir. 1997).

The Fourth Circuit articulated the standards for the sufficiency of an indictment in *United States v. Brandon*, 298 F.3d 307 (4th Cir. 2002), stating:

> "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Usually "an indictment is sufficient if it alleges an offense in the words of the statute," as long as the words used in the indictment "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence[.]" However, simply parroting the language of the statute in the indictment is insufficient. When the words of a statute are used to describe the offense generally, they "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." Thus, the indictment must also contain a "statement of the *essential facts* constituting the offense charged."

*Id.* at 310 (internal citations omitted) (emphasis in *Brandon*); *see also United States v. Wicks*, 187 F.3d 426, 427 (4th Cir. 1999); *United States v. Darby*, 37 F. 3d 1059, 1063 (4th Cir. 1994); *United States v. Cobb*, 905 F. 2d 784, 790 (4th Cir. 1990), *cert. denied*, 498 U.S. 1049 (1991).

Counts One and Two of the Indictment charge the defendant with conspiring to provide, providing, and attempting to provide material support to ISIL, a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B. In order to satisfy its burden of proof as to these counts, the government must prove: 1) the defendant knowingly provided material support or resources to a foreign terrorist organization, *i.e.*, ISIL; 2) that the defendant knew that ISIL was a designated terrorist organization, or that it had engaged or was engaging in terrorist activity or terrorism; and 3) that one of the jurisdictional requirements set forth in the statute is satisfied. 18 U.S.C. § 2339B(a)(1).[10]

In order to satisfy its burden of proof as to Count Three of the Indictment, which charges the defendant with unlawful financing of terrorism, in violation of 18 U.S.C. § 2339C(a), the government must prove: 1) the defendant willfully collected funds; 2) that he had the knowledge that the funds were to be used, in full or in part, to carry out an act intended to cause death or serious bodily injury to a civilian, and whose purpose, by its nature or context, was to intimidate a population; and 3) that he committed the offense while in the United States and satisfied one of the statutory jurisdictional requirements. 18 U.S.C. § 2339C(a).[11]

Finally, as to Count Four of the Indictment, which charges Elshinawy with making material false statements, in violation of 18 U.S.C. § 1001, the government must prove: 1) on or

---

[10] The jurisdictional requirement is met by establishing one of the following: the defendant is a national of the United States; after the conduct occurred, an offender was brought back to, or found in, the United States; the offense occurred in whole or part in the United States; the offense occurred in or affected interstate or foreign commerce; or an offender aided or abetted, or conspired with, any person over whom jurisdiction exists for the offense. 18 U.S.C. § 2339B(d).

[11] The jurisdictional requirement is met by establishing one of the following: the defendant was a national of the United States; a perpetrator was found outside of the United States; or the offense was directed toward or resulted in the carrying out of a predicate act within the United States, and either the offense or predicate act was conducted in, or the results thereof affected, interstate or foreign commerce. 18 U.S.C. § 2339C(b).

about the dates specified, the defendant made statements or representations; 2) that were material; 3) that were false, fictitious, or fraudulent; 4) that were made knowingly and willfully; and 5) that were made in a matter within the jurisdiction of the government of the United States – in this case, an investigation being conducted by the FBI, an agency within the executive branch of the government. 18 U.S.C. § 1001(a)(2); Sand & Siffert, *Modern Federal Jury Instructions*, § 36-9.

As the government maintains, the allegations of the Indictment amount to more than the defendant's "mere membership" in an organization.   Rather, they include allegations of the defendant's "active conduct at the direction of, and in coordination with his ISIL coconspirators."   ECF 66 at 22.   For example, in a conversation on September 4, 2015, Coconspirator #1 allegedly told the defendant that he (Coconspirator #1) was a member of ISIL. ECF 19, ¶ 36.   In a conversation with Coconspirator #1 over social media on February 17, 2015, Elshinawy allegedly pledged his allegiance to ISIL and committed himself to violent jihad.   ECF 19, ¶ 10.   He also asked Coconspirator #1 to "convey his message of loyalty to ISIL leadership . . . ."   *Id.*   Coconspirator #1 "cautioned" defendant "not to discuss his plans for a potential terrorist attack with anyone, to which [defendant] agreed . . . ."   *Id.*

In addition, during a conversation on March 11, 2015, defendant allegedly sought to persuade his brother to join ISIL.   ECF 19, ¶ 11.   And, during a discussion over social media on August 31, 2015, defendant "directed" his brother to advise Coconspirator #1 that he, Elshinawy, had been revealed.   *Id.* ¶ 35.   He also "directed his brother to take steps to conceal their communications . . . ."   *Id.*

The Indictment also includes specific reference to various forms of covert communications.   Notably, on March 28, 2015, defendant purchased a cellular phone to further

his communications with Coconspirator #1 and other ISIL operatives.   ECF 19, ¶ 14.   He activated that phone on April 2, 2015, registering it under a false name with a false address to conceal his ownership and use of it.   *Id.* ¶ 15.   It also includes the use of financial accounts and services by defendant for receipt of monies into the United States for the purpose of conducting a terrorist attack.   *Id.* ¶ 6.   In particular, this included bank accounts, online financial accounts, prepaid credit/debit cards, online e-Commerce accounts, and a business account of the Overseas Company.   *Id.*

Defendant's complaints largely amount to evidentiary challenges, which are not appropriate for consideration at this juncture.   As the *Lindh* Court noted, 212 F. Supp. 2d at 576, "a pre-trial motion to dismiss under Rule 12(b) . . . 'cannot be based on a sufficiency of the evidence argument' . . . ." (citation omitted).

For example, with respect to Count Three, defendant complains that the Indictment fails to identify facts establishing that he received funds from ISIL with the intent to carry out a terrorist act.   Similarly, he complains that the Indictment does not allege his use of the funds for that purpose.   But, as the government has observed (ECF 66 at 30), these assertions are not elements of the offense under § 2339C(a).   That statute prohibits, *inter alia*, providing or collecting funds with the intention to use them to carry out a terrorist act, or with the knowledge that such funds were to be used to carry out a terrorist attack.   18 U.S.C. § 2339C(a).   And, as the government also points out, statements that reveal defendant's intent to join ISIL, or that reflect his knowledge that ISIL is a terrorist organization, may be used to establish motive, knowledge, and intent.   *See Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993).

The principles outlined above persuade me that the Indictment adequately charges violations of 18 U.S.C. § 2339B; 18 U.S.C. § 2339C; and 18 U.S.C. § 1001.   The Indictment

includes sufficient factual detail so as to apprise Elshinawy of the charges against him.   All counts of the Indictment contain adequate specificity and provide ample notice to defendant as to the charges.

## B.  Motion to Sever

Defendant seeks a severance of Count Four on the ground that he will be prejudiced by a trial of the false statement charge (Count Four) with the material support charges in Counts One, Two, and Three.  As noted, at the motion hearing, defendant submitted on his Motion to Sever. ECF 52.

In its Opposition, the government argues, ECF 66 at 12:  "Because [defendant's] false statements to law enforcement were about the very conduct that is the subject of the terrorism charges in Counts One through Three, the joinder was proper under both the rules and case law, and the defendant fails to demonstrate the prejudice required to sever them."  The government adds that it will be a waste of judicial resources to hold two trials that present duplicate testimony.  *Id.*

I agree with the government.

Rule 8(a) of the Federal Rules of Criminal Procedure governs joinder of offenses.   It states, in part: "The indictment . . . may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  The question of whether offenses are improperly joined under Rule 8(a) is a question of law for the court.  *United States v. Blair,* 661 F.3d 755, 768 (4th Cir. 2011).

Joinder of related charges is broadly permitted to avoid "needless duplication" of judicial proceedings.  *United States v. Mir*, 525 F.3d 351, 356-57 (4th Cir. 2008).  This promotes judicial

economy. *Zafiro v. United States*, 506 U.S. 534 (1993); *see also Blair*, 661 F.3d at 768 ("To promote judicial efficiency, Rule 8(a) 'permits very broad joinder' of 'related counts in the same trial.'") (citation omitted).

"[J]oinder is the 'rule rather than the exception.'" *United States v. Hawkins*, 776 F.3d 200, 206 (4th Cir. 2009) (citation omitted).  In *United States v. Cardwell*, 433 F.3d 378, 385 (4th Cir. 2005), the Court recognized that "Rule 8(a) 'permit[s] very broad joinder'" because it creates "efficiency in trying the defendant on related counts in the same trial." *Id.* (citation omitted).  In particular, "'the prospect of duplicating witness testimony, impaneling additional jurors, and wasting limited judicial resources suggests that related offenses should be tried in a single proceeding.'" *Blair*, 661 F.3d at 768-69 (quoting *United States v. Hawkins*, 589 F.3d 694, 700 (4th Cir. 2009), *opinion amended and superseded*, 776 F.3d 200 (4th Cir. 2015)).  This is particularly so where evidence of one charge would be admissible to prove another charge. *United States v. Branch*, 537 F.3d 328, 341 (4th Cir. 2008); *see also United States v. Jamar*, 561 F. 2d 1103, 1106-07 (4th Cir. 1977) (noting that "if the evidence of all the joined crimes would be mutually admissible for legitimate purposes in separate trials for each offense (assuming no joinder), the possibilities of prejudice from the fact of joinder no longer present themselves so forcefully").

The Fourth Circuit has explained that, "[i]n determining whether two offenses are connected with or constitute parts of a common scheme or plan for purposes of Rule 8(a), we have read the rule 'flexibly' to require simply a 'logical relationship' between offenses charged in the indictment." *Blair*, 661 F.3d at 769 (citation omitted).  A logical relationship exists "when consideration of discrete counts against the defendant paints an incomplete picture of the defendant's criminal enterprise." *Cardwell*, 433 F.3d at 385.  For example, the *Cardwell* Court

reasoned that, when a firearm is recovered along with evidence of the defendant's drug trafficking, joinder of the charges is appropriate because of the "'natural inferences that may be drawn from the contemporaneous possession of guns and drugs.'" *Id.* at 386 (citation omitted). Conversely, joinder "'cannot be stretched to cover offenses . . . which are discrete and dissimilar.'" *Hawkins*, 776 F.3d at 206 (citation omitted).

*United States v. Carmichael*, 685 F.2d 903, 905 (4th Cir. 1982), is informative.  There, the defendants were convicted of "conspiracy to buy votes and substantive counts of vote buying in the primary election, as well as obstruction of justice in connection with the grand jury investigation of the election." *Id.* at 906.  On appeal, they challenged the denial of their motions to sever the obstruction counts from the substantive counts.  *Id.* at 909-10.  The Fourth Circuit determined that the obstruction was a part of the same "series of acts or transactions" as the other counts because they "related to actions by [the defendants] to conceal the actions for which they were charged under conspiracy and substantive counts." *Id.* at 910.  As a result, joinder was deemed proper and there was no potential prejudice that would have justified severance. *Id.*; *see also Jamar*, 561 F.2d at 1105-06 (affirming the defendant's convictions on perjury, unlawful possession of a stolen check, and uttering with intent to defraud; concluding that joinder was proper because "all three counts relate to, and are logically and intimately connected together with, the theft and cashing of the treasury check") (internal quotations and citations omitted).

In my view, the government properly joined Count Four, charging false statement, with the material support charges in Counts One, Two, and Three.  It would be difficult to establish the false statements without introducing evidence pertinent to Counts One, Two, and Three. Joinder would avoid two trials with "much of the same proof when one would suffice." *Jamar*, 561 F.2d at 1107.

31

If joinder is initially proper under Rule 8(a), "then the defendant's only recourse is to convince the court that the charges should be severed under Rule 14. . . ." *Blair*, 661 F.3d at 768; *see United States v. Hackley*, 662 F.3d 671, 684 (4th Cir. 2011); *Cardwell*, 433 F.3d at 387.

Rule 14 of the Federal Rules of Criminal Procedure is titled "Relief from Prejudicial Joinder." Rule 14 (a) states, in part: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."

Under Rule 14, the court has discretion to require a severance if the defendant establishes that actual prejudice would result from a single trial. *Blair*, 661 F.3d at 770. In other words, a severance under Rule 14 is proper "only if there is a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993); *see United States v. Min*, 704 F.3d 314, 319 (4th Cir. 2013).

A defendant who moves for severance under Rule 14 has the burden of demonstrating "a strong showing of prejudice." *United States v. Goldman*, 750 F.2d 1221, 1225 (4th Cir. 1984); *accord Mir*, 525 F.3d at 357. As the Fourth Circuit recognized in *Blair*, 661 F.3d at 768, it is a "daunting task" to demonstrate such a serious risk. *Id.* at 770.

Severance is not appropriate merely because it might improve the defendant's chances for an acquittal. *Blair*, 661 F. 3d at 770; *United States v. Lighty*, 616 F.3d 321, 348 (4th Cir. 2010); *United States v. Reavis*, 48 F.3d 763, 767 (4th Cir. 1995); *Goldman*, 750 F.2d at 1225. Rather, "[t]here must be such a stark contrast presented by the defenses that the jury is presented with the proposition that to believe the core of one defense it must disbelieve the core of the other . . . ." *United States v. Najjar,* 300 F.3d 466, 474 (4th Cir. 2002). And, the trial judge must balance the

interest in judicial economy against the risk of prejudice to the defendant.  *Zafiro*, 506 U.S. at 539; *United States v. Dorlouis*, 107 F.3d 248, 257 (4th Cir.), *cert. denied*, 521 U.S. 1126 (1997).

In *Goldman*, 750 F.2d at 1224, the Fourth Circuit identified "three sources of prejudice" that may justify the granting of a severance under Rule 14 when joinder is based on the similarities of the offenses.  These are: 1) the jury may confuse and cumulate the evidence, and convict the defendant of one or both crimes when it would not convict him of either if they could keep the evidence properly segregated; 2) the defendant may be confounded in presenting defenses.  For example, in one case he might desire to assert his privilege against self-incrimination but not in the other; or 3) the jury may conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition.  (Citing *United States v. Foutz*, 540 F.2d 733, 736 (4th Cir. 1976)).

In analyzing the prejudice component, it is important to consider whether, if there were a severance, evidence under one of the severed counts would in all probability be admissible at a trial on the other count, pursuant to Rule 404(b) of the Federal Rules of Evidence.  In addition, the court must consider whether, by way of a proffer, the defendant has made a showing that a joinder of the counts would "confound" his presentation of defenses.  *Goldman*, 750 F.2d at 1225.  And, as the court reiterated in *Goldman*: "In making such a showing, it is essential that the defendant present enough information – regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other – to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of 'economy and expedition in judicial administration' against the defendant's interest in having a free choice with respect to testifying."  *Id.* (citation omitted).

Defendant fails woefully.  He has not shown that the evidence as to Counts One, Two, and/or Three would be inadmissible at a separate trial as to Count Four.  Nor has he indicated how his defenses would be adversely affected by way of a joint trial.

*United States v. Branch*, *supra,* 537 F.3d 328, is instructive.  There, an undercover officer purchased narcotics from the defendant on two occasions in September 2004.  *Id.* at 332.  Then, on October 29, 2004, while Branch was still under investigation for narcotics trafficking, he was the subject of a vehicle stop, and drugs, paraphernalia, cash, and a weapon were recovered from his vehicle.  *Id.*  The grand jury returned a four-count indictment against Branch.  *Id.* at 334.  The first two counts charged Branch with distribution of cocaine on September 2 and September 14 of 2004.  *Id.*  Counts III and IV charged him with illegal possession of a firearm and possession with intent to distribute cocaine based on the events of October 29, 2004.  *Id.*  The trial court denied Branch's motion to sever Counts I and II from Counts III and IV, and the Fourth Circuit affirmed.  *Id.* at 334, 341.

The Fourth Circuit reasoned that the four counts all stemmed from episodes of possession or distribution of cocaine base within a two-month period, and were "so related as to permit joinder under the broad scope of Rule 8(a)."  *Id.* at 341.  Moreover, the Court stated that "Branch's conclusory assertion of unfairness fail[ed] to satisfy his burden of demonstrating a strong showing of prejudice."  *Id.*  In addition, the Court noted that the district judge found that, even if it severed the charges, evidence of Branch's distribution of cocaine base under Counts I and II would be admissible at a trial on Counts III and IV, because the evidence of Branch's earlier cocaine distribution was probative of his knowledge – a fact in dispute – of the cocaine base and firearm in the vehicle.  *Id.*  On this basis, the Fourth Circuit concluded that the district court properly exercised its discretion in denying the severance, as it would have resulted in

34

unnecessary duplication of efforts by the court, witnesses, and a second jury.  *Id*.; *see also United States v. Snyder*, 365 Fed. App'x 508, 509-10 (4th Cir. 2010) (concluding that obstruction of justice count "was part of the same transaction" as the wire fraud count).

The case of *United States v. Cooper*, 482 F.3d 658 (4th Cir. 2007), also provides guidance.  In *Cooper*, the Court said: "Rule 404(b) explicitly allows evidence that furnishes proof of the defendant's knowledge and the 'absence of mistake or accident.'"  *Id*. at 663 (citation omitted).  *Cf. United States v. McBride,* 676 F.3d 385 (4th Cir. 2012) (reversing the admission of other bad acts under Rule 404(b), but recognizing that such evidence may be admissible to prove knowledge or absence of mistake).

It is also salient that prejudice resulting from a single trial of multiple counts can be cured by means less restrictive than severance.  *Mir*, 525 F.3d at 357 (4th Cir. 2008); *see Zafiro*, 506 U.S. at 539 (recognizing "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice" permit denial of severance).  A district court may instruct a jury that a separate crime or offense is charged in each count of the indictment and each must be considered separately.  As the Court recognized in *Cardwell*, 433 F.3d at 388, it previously held that such a jury charge "neutralized the possibility that the jury would hold the defendant's felony status against him when considering his guilt on other charges."

In *Blair*, 661 F.3d 755, the defendant, an attorney, claimed that two tax counts were improperly joined to other counts in his indictment charging money laundering, witness tampering, and the like.  And, even if there were no misjoinder, the defendant argued that the tax counts should have been severed under Rule 14 of the Federal Rules of Criminal Procedure.  Quoting *Cardwell*, 433 F.3d at 387, the Fourth Circuit reiterated that under Rule 14 a properly joined claim may be severed "'*only* if there is a serious risk that a joint trial would . . . prevent

the jury from making a reliable judgment about guilt or innocence.'"   *Id.* at 768.   In addressing the possible misjoinder of one tax count, the Court observed: "[T]here was little chance that evidence relating to the misjoined count would have a prejudicial spillover effect on the other counts in the indictment."   *Id.* at 769.   Among other things, the Court pointed to the trial judge's cautionary jury instruction.   *Id.*; *see also United States v. Mackins*, 315 F.3d 399, 414 (4th Cir. 2003); *United States v. LaRouche*, 896 F.2d 815, 831 (4th Cir. 1990) (recognizing that curative instructions to the jury "go a long way in eliminating any prejudice resulting from the spillover effects of joinder").

The standards outlined above compel that severance of Count Four is not warranted. Count Four alleges false statements to FBI agents in July 2015, during the alleged conspiracy. The statements concerned the defendant's involvement in the conspiracy and the substantive offenses that are the basis of the charges in the other three counts.   The underlying conduct in which defendant was involved would likely be admissible at a separate trial on Count Four, to explain the false statements.   And, any potential for prejudice can be addressed by a cautionary instruction.   *See, e.g.*, *Blair*, 661 F.3d at 770 (finding no prejudice where court issued a limiting instruction); *United States v. Ketter*, 456 Fed. App'x 293, 296 (4th Cir. 2011) (same).   Further, by trying the counts together, the court avoids the unnecessary waste of resources and time, not only for itself but also for the taxpayers and for the citizens who would be called for jury service.

## V.   Conclusion

For the reasons set forth above, I shall deny the Motion to Dismiss (ECF 51) and I shall deny the Motion to Sever (ECF 52).   An Order follows.

Date: December 16, 2016                                  /s/
                                               Ellen L. Hollander
                                               United States District Judge