## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | CRIMINAL NO. ELH-16-0009 |
| v. | * | |
| | * | |
| MOHAMED ELSHINAWY, | * | |
| | * | |
| Defendant | * | |
| | * | |
| | ****** | |

## MOTION TO STRIKE EXPERT TESTIMONY OF
## MARC SAGEMAN

The United States of America, by and through its undersigned counsel, moves for the following reasons to exclude the defense from offering expert testimony of Marc Sageman during the evidentiary hearings scheduled for October 24-26, 2017.

## I.      Legal Standard

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.  *See Daubert v. Merrill Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597 (1993) (holding that the trial court must act as a gatekeeper to determine whether an expert is qualified to testify before the jury, whether his proposed testimony rests on a reliable foundation, and whether the testimony is relevant to the fact finder); *United States v. Dorsey*, 45 F.3d 809, 812-15 (4th Cir. 1995) (adopting *Daubert* analysis in upholding trial court's exclusion of expert testimony of

forensic anthropologists on issue of the identification of defendant as the alleged bank robber).

Rule 1101, however, provides that "[t]hese rules…do not apply to the following: … (3) miscellaneous proceedings such as: … sentencing." FED. R. EVID. 1101(d). "In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3 (emphasis added). *See, e.g.*, *United States v. Seay*, 553 F.3d 732, 741 (4th Cir. 2009) (quoting U.S.S.G. § 6A1.3)

For example, in *United States v. Bowker*, the Sixth Circuit held that the district court had not abused its discretion in admitting the expert testimony of Agent McNamara to address the application of the stalking guideline. 372 F.3d 365, 392–93 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1182 (2005). There, the Court explained that:

> McNamara opined that the sending of gifts in a stalking case is "significantly important in the areas of increased dangerousness." He further testified that Bowker escalated his activity, from contacts through the mail, to telephonic and electronic mail contact, to traveling interstate to pursue Knight. McNamara also indicated that Bowker's past history of violence, including domestic abuse, was a predictor of future dangerousness or violence. As a consequence of these findings, McNamara concluded that Bowker was a more dangerous type of stalker.

*Id.* at 392. Specifically, the Court found sufficient indicia of reliability where:

> Agent McNamara has been with the FBI for 15 years and is assigned to the FBI as a behavioral analyst. His duties include looking at the behavior of criminals, conducting research with convicted offenders and disseminating the results of that research, and working on active criminal cases as a law enforcement consultant. McNamara has been trained in a variety of disciplines, including criminal justice, psychology, forensic science, anthropology and psychology.

*Id.* at 392-93. *See also United States v. Hunter*, 145 F.3d 946, 952 (7th Cir. 1998) (approving expert testimony at sentencing about quantity of crack where "Lieutenant Murphy's extensive investigative experience with crack cocaine, as well as his training in the area, cloaked his

2

testimony with the requisite indicia of reliability."); *United States v. McCaskey*, 9 F.3d 368, 380 (5th Cir. 1993) (approving expert testimony about the determination that the substance seized was cocaine base where the witness provided some information about the accuracy of the testing machine); *United States v. Driver*, 132 F.3d 34 (6th Cir. 1997) (approving expert testimony by special agent at sentencing about the value of properties where he had been involved in the investigation of these types of properties for five years and had spoken with employees at both locations).

Case law analyzing the reliability of expert opinions under *Daubert* is instructive.  For example, a court will exclude testimony based on "belief or speculation," *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999), or when not supported by the record.  *Bryte ex rel. Bryte v. Am. Household, Inc.*, 429 F.3d 469, 477 (4th Cir. 2005); *Tyger Const. Co. v. Pensacola Const. Co.*, 29 F.3d 137, 142 (4th Cir. 1994).  Moreover, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## II.    Argument

Dr. Sageman's proposed testimony should be excluded.  The defense proffers Dr. Sageman as an "expert in terrorism" but details potential opinions that range far from even that broad proposed area of expertise, and that do not have a sound basis in either methodology or experience. He proffers a number of conclusions for which he provides no support.  He provides no "indicia of reliability" for his conclusion that the defendant is "not a terrorist" or would not have been likely to commit an attack.  Moreover, large portions of his proposed testimony are simply selective regurgitations of hearsay from the defendant.  As a result they should be excluded.

### A.      Likelihood of Committing an Attack

Dr. Sageman's primary opinion appears to be that "it is unlikely that Mr. Elshinawy had the capacity, either individually or with others, to organize or conduct any terrorist attack on behalf of ISIS in the United States" and that "Mr. Elshinawy is not a 'terrorist.'"  (Oct. 2, 2017 Def. Expert Designation at 2.)  He claims that this conclusion is based on the following: (1) "that Mr. Elshinawy appears to have failed at all of his enterprises…", (2) that he had "an inability to maintain steady employment," (3) that he had a "self-centered attitude and lack of maturity"; (4) he has a "fascination with the internet"; and (5) he had used drugs and had limited financial means. (*Id.*)

Dr. Sageman, however, offers no basis for the Court to believe that these factors are determinative of whether the defendant, or anyone else for that matter, would actually commit a terrorist attack.  He provides no analysis of other terrorist attacks or terrorism cases that would indicate that these factors are any more relevant than the color of an individual's hair or his height. For example, Dr. Sageman provides no reason to believe that the defendant's lack of maturity or fascination with the internet are distinct from others who have committed or sought to commit terrorist attacks.  Quite to the contrary, both traits are not uncommon in others who have committed or sought to commit terrorist attacks.

Moreover, Dr. Sageman identifies nothing in his own background to indicate that he has conducted such an analysis.  Ultimately, his opinion is based solely on the "the *ipse dixit* of the expert," which is not helpful to the court and certainly bears no "indicia of reliability."

Moreover, even had Dr. Sageman done some analysis to identify such a profile, similar "profile" evidence has been held inadmissible and unreliable under *Daubert*.  *See, e.g., United States v. Lim*, 984 F.2d 331, 335 (9th Cir. 1993) (holding that it was error to admit drug courier

4

profile expert in government's case-in-chief); *United States v. Medeles-Cab*, 754 F.3d 316, (5th Cir. 2014) (holding that agent's expert testimony was distinct from inadmissible drug courier profile testimony and, thus, admissible); *United States v. Jones*, 913 F.2d 174, 177 (4th Cir. 1990) ("[T]he government attempted to establish the defendant's guilt by showing that he has the same characteristics as a drug courier.  The use of the drug courier profile in this manner is clearly impermissible.").  **This analysis has been applied in a terrorism case.**  "To the extent [the defendant's] preferred expert would have testified that he did not 'fit the terrorist profile,' such testimony would probably have been excluded."  *Cromitie v. United States*, No. 09 CR 558-01 (CM), 2017 WL 1383982, at *9 (S.D.N.Y. Apr. 7, 2017) (citing drug courier profile cases).

Here, Dr. Sageman appears to claim that, based on a few particular characteristics, the defendant fits the profile of someone who, although engaged in a conspiracy to support terrorism, would not actually commit a terrorist attack.  The disclosure provided by the defense provides no basis to distinguish Dr. Sageman's proposed opinion from other excluded "profile" opinions.  Although the standard at sentencing is somewhat lower, Dr. Sageman's proposed opinion is similarly unreliable, and the defense offers <u>no</u> indicia that would lead the Court to think otherwise.

### B.   Distinguishing Prior Attacks

Dr. Sageman also proposes to distinguish the defendant from prior ISIS attacks in the United States, specifically identifying a number of things he asserts the defendant <u>did not</u> do prior to his arrest.  (*Id.* at 3.)  But, as with the profile evidence above, he offers no evidence of an actual analysis, and there is no reason to believe that these distinctions are relevant or useful.  Moreover, a number of his assertions are conflict with the evidence, as well as the factual statement of that evidence to which the defendant agreed in his plea agreement and at the Rule 11 colloquy with the

Court.  As such, Dr. Sageman's opinion in this area bears no "indicia of reliability" and should be excluded.

For example, he suggests that the defendant "never attempted to travel abroad to live in ISIS-controlled territories."  (*Id.*)   As an initial matter, this assertion is misleading because in Facebook conversations, the defendant discussed his desire and plans to travel to live among ISIS with his wife, indicating that he would delay that travel until he had completed actions he intended to undertake in this country in connection with the charged conspiracy.   Those plans were interrupted mid-stream when, as the defendant stated to his brother, he was "revealed and uncovered" by law enforcement.   But, even if Dr. Sageman's travel assertion was an accurate assessment, he provides no reason to believe that particular fact (or the others that he claim distinguish the defendant) is important to the conclusion he has reached.   Quite to the contrary, like the defendant, those who plan to commit, or who have actually committed, attacks in the United States have not sought to travel to live in ISIS-controlled territories.   Had they done so, they would not have been present here to commit their attacks.   His suggestion that this is an important point of difference is not reliable and should be excluded.

### C.   Other Baseless Opinions

Dr. Sageman proffers a number of opinions for which he offers no basis whatsoever.   For example:

- ISIS would not have trusted the defendant because at the time he was "untested."  (*Id.* at 4.)
- the total sum of money the defendant received "was a pittance, and an amount ISIS would have been prepared to lose if nothing came of the relationship."  (*Id.* at 4-5.)
- "the nature of the interviews and the sequence of events throughout the Summer and into the Fall reflect that the FBI viewed Mr. Elshinawy as a potential source of information rather than as a threat to commit a specific act of terrorism, and continued meeting with Mr. Elshinawy to obtain additional information relevant to its investigation."  (*Id.* at 5.)

Sageman provides no basis for these opinions about the inner workings and likely motives of these organizations.   He provides no basis for the fact finder to believe that he would know whether or not ISIS or its members would have trusted the defendant.   And, in light of the defendant's actual interactions with ISIS representatives, that appears contradicted by the evidence.   Dr. Sageman provides no reason to believe that his suggestion that ISIS would have been willing to lose the money is anything more than speculation, or why that is relevant to any determination.   Moreover, he proposes no reason to believe that his experience allows him to do anything more than speculate about how the FBI viewed the defendant in 2015.

In determining the reliability of proposed expert testimony, courts generally look to the expert's training and experience, the data/information he relied upon, and the methods and principles applied.  *See* FED. R. EVID. 702.   "A reliable expert opinion must be based on scientific, technical, or other specialized knowledge and ***not on belief or speculation***, and inferences must be derived using scientific or other valid methods…."  *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 200 (4th Cir. 2001) (internal quotations omitted).   "[A]n expert witness' speculation as to the motivation of Defendants is outside the realm of Rule 702."  *In re Baycol Prod. Litig.*, 532 F. Supp. 2d 1029, 1054 (D. Minn. 2007).   Although the Rules of Evidence do not apply here, this sort of speculation is similarly inadmissible.   Dr. Sageman offers no basis for these opinions.   As a result, there is no apparent "indicia of reliability," much less the "***sufficient indicia of reliability*** to support its probable accuracy" required.  *See* U.S.S.G. § 6A1.3.

### D.      Hearsay Evidence

The lion's share of Dr. Sageman's proposed "opinions" consists of nothing more than the regurgitation of self-serving hearsay from the defendant, his family, and documents.   But, even more unreliably, Dr. Sageman offers summary conclusions with no reference to the factual bases

for those conclusions.  As a result, large portions of his testimony simply not "expert" in nature, and they seek to take over the role of the fact finder by offering baseless conclusions about the facts at issue.  "[E]xpert testimony that is merely speculation or pure conjecture based on the expert's impressions of the physical evidence must be excluded as not based on any reliable methodology or scientific principle."  *In re Baycol Prod. Litig.*, 532 F. Supp. 2d at 1053.

For example, Dr. Sageman claims that, "while Mr. Elshinawy received money from ISIS, none of it was spent for purchases of goods that could be associated with any specific and particular operational objective."  (*Id.* at 2.)  This may be based on his review of documents, financial materials gathered by another proposed defense expert, and/or discussions with Mr. Elshinawy. Whatever the source, it simply reasserts the hearsay of others.  And, to the extent Sageman offers an opinion that certain materials are or are not "operational," he does not define "operational," nor does he explain how he determined what does and does not fall into that category.  Moreover, there is no reason to believe that his experience has provided him with an ability to determine what particular materials could be used "operationally" by someone in ISIS's employ.  Most significantly, his claim contradicts the evidence of the defendant's operational activities in support of ISIS as set forth in the Indictment to which he has plead guilty.  As such, this proposed testimony has none of the "indicia of reliability" necessary for admission.

Dr. Sageman also offers a number of conclusions that simply inject the self-serving hearsay statements of the defendant and contradict the evidence underlying the charges to which the defendant has plead guilty.  For example:

1.      Dr. Sageman asserts that the defendant "never formulated any plans of attack, nor identified any potential targets," (*id.* at 3.), "never discussed with Individual #1 any concrete plans for a terrorist attack," (id. at 4) and that "there is no evidence that Individual #1 directed [the

defendant] to commit any specific attack." (*Id.* at 4.)   In his Facebook conversations with Individual #1, the defendant talked about having action plans in connection with the conspiracy and was instructed by Individual #1 not to discuss those plans with anyone.

2.      Dr. Sageman asserts that the defendant "never espoused ISIS ideology publicly through social media websites and applications such as Twitter, Facebook, or YouTube, or attempted to recruit anyone in the U.S. to join ISIS." (*Id.* at 3.)   In his private Facebook conversations with his brother and with Individual #1 (which the defendant deleted from his own Facebook account), the defendant repeatedly espoused ISIS ideology.   It is absurd to suggest that doing so privately is a determinative factor of whether the defendant would have committed a terrorist attack before or after he was intercepted by the FBI.   It is equally absurd to argue that a failure to attempt to recruit someone in the U.S. to join ISIS is significant given that the defendant clearly attempted to recruit his own brother, who lives in Saudi Arabia, to join ISIS.

3.      Dr. Sageman asserts that the defendant "never sought training to fight on behalf of ISIS." (*Id.* at 3.)   However, in a conversation with Individual #1, the defendant asked for instruction on making some sort of explosive device.

4.      Dr. Sageman asserts that the defendant "never attempted to travel abroad to live in ISIS-controlled territories." (*Id.* at 3.)   As previously noted, the defendant discussed with Individual #1 his plans to travel to ISIS-controlled territories as soon as he completed his action plans in the U.S.   He also repeatedly discussed with his brother his desire to live in the Islamic State.

5.      Dr. Sageman asserts that the defendant "never associated with anyone else for the purposes of coordinating an operation." (*Id.* at 3.)   In his own statements to the FBI in July 2015, the defendant admitted that he knowingly received monies he was instructed to use for "operational

purposes," and was provided with the example of the terrorist attack in Garland, Texas, as the type of operational activity he was to undertake. Moreover, the defendant has now admitted not only to conspiring to provide material support to ISIS, but also to providing and attempting to provide material support to ISIS in the form of personnel, means and methods of communication, and financial services. It is nonsensical to allege he would likely not have committed a terrorist attack because he did not associate with people other than his admitted coconspirators in operational activities.

Although an expert can rely on otherwise inadmissible statements, FED. R. EVID. 703, they cannot simply "act[] as a transmitter for testimonial hearsay." *See United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009). *See also Tomkins v. Moore*, 193 F.3d 1327, 1337-38 (8th Cir. 1999) ("The opinion of a medical expert that a defendant was intoxicated with alcohol or drugs at the time of the capital offense is unreliable and of little use as mitigating circumstances evidence when it is predicated solely upon the defendant's own self-serving statements, especially when other evidence is inconsistent with those statements."); *United States v. Tipton*, 269 Fed. Appx. 551, slip op. at 8 (2008) (6th Cir. 2008) (upholding exclusion of expert where "opinions were based solely on the Defendants' self-serving statements regarding their assets."); *Garcia v. Giurbino*, 46 Fed. Appx. 881, slip op. at 1 (9th Cir. 2002) (upholding limiting of expert testimony where expert used the plaintiff's "self-serving hearsay as a basis for his expert opinion").

Here, even if the hearsay statements were admissible, having them parroted and/or summarized by Dr. Sageman is not helpful to the fact finder. There is, again, no actual opinion offered here and, certainly, no "indicia of reliability" that would indicate that it should be admitted. Likewise, there is no actual expertise added to the selective summary of hearsay. The Court is well-equipped to consider the factual evidence in this case and having Dr. Sageman present

selected hearsay to the Court is neither helpful nor reliable.

Dr. Sageman also proposes to testify about the defendant's knowledge of the UK company he received payments from.  Specifically he proffers:

- "it appears that the individuals associated with the UK Company (described in the stipulated Statement of Facts as Individual #2, Individual #3, and Individual #4) were not known to Mr. Elshinawy."  (*Id.* at 4.)
- "Dr. Sageman will testify that Mr. Elshinawy had no knowledge of what was occurring in the United Kingdom, and the extent of his involvement with the UK Company was limited to the receipt of money."  (*Id.*)

Again, these are conclusions summarizing certain hearsay clearly from the defendant.  There is no actual analysis and, as a result, there is no reason to believe that these statements are reliable. Moreover, certain aspects of them are directly contradicted by the evidence, e.g., the handwritten document found in the defendant's house that had the name and contact info for Individual #4 with regard to an attempt to send money to the defendant via MoneyGram, and the fact that the defendant communicated to his ISIS associates their failure to complete that money transfer and the need for them to contact MoneyGram to rectify the problem.

Dr. Sageman also offers his "opinion" that the defendant discussed ISIS ideology with his brother, his brother was not persuaded, and they did not discuss specific plans for an attack.  (*Id.* at 5.)  This selective summarizing of self-serving hearsay statements, either from the documents or from his discussions with the defendant or the defendant's brother, is not an expert opinion – it is a factual conclusion that is the province of the fact finder.  Yet again, Dr. Sageman's "opinion" contradicts the evidence of the defendant having discussed with his brother on Facebook his dreams about people killing each other in a church where he had a gun.  There is no basis to believe that this opinion has any indicia of reliability.

Dr. Sageman also proposes to testify to select portions of the FBI interviews with the defendant.  (*Id.*)  Again, this is simply an improper effort to inject "cherry picked" hearsay

statements of the defendant with no actual expert opinion.  It is not reliable a reliable "opinion" and should be excluded.  *See In re Baycol Prod. Litig.*, 532 F. Supp. 2d at 1053.

## III.     Conclusion

The proffered testimony of Dr. Sageman contains none of the "indicia of reliability" that are necessary for its admission at sentencing.  *See* U.S.S.G. § 6A1.3; *Seay*, 553 F.3d at 741.  As a result, it should be excluded from the evidentiary hearing in advance of the defendant's sentencing.

Respectfully submitted,

Stephen M. Schenning
Acting United States Attorney

By:     ____/s/_____
Kenneth S. Clark
Christine Manuelian
Assistant United States Attorneys
36 South Charles Street, Fourth Floor
Baltimore, Maryland 21201
(410) 209-4800