UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF
MARYLAND

FILED _____ ENTERED
LODGED _____ RECEIVED

MAR 3 0 2021

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

MOHAMED Y. ELSHINAWY,

Petitioner,

V.

UNITED STATES,

Respondent.

Civil Action No.
ELH-20-3163
(Related Criminal No.
ELH-16-009)

REPLY From MOHAMED ELSHINAWY, Petitioner
To UNITED STATES, Respondent's RESPONSE
28 U.S.C. §2255 MOTION

I. Regarding the "Factual Background" in the Government's Response

First / The Government in this section wrote a series of a dramatic allegations which is token mostly from the plea agreement which the Petitioner signed under the influence of fear from physical bodily harm "The FBI agent David A. Rodski and Mr. Ronald Kasting's threat" and after the intimidation, manipulation and the unreasonable poor performance from the Petitioner's attorney. Petitioner in ground three in his motion to vacate indicated that all consents to agreements in this case were either un-voluntarily, un-intelligently or un-knowingly done. So the Petitioner will not discuss the allegations based on this false and abusive plea agreement.

(1)

Second / Notably, It is very strange and suspicious the way the Government in this Response is attempting to make Legal arguments and conclusions which would underestimate the Court's intelligence and underestimate the Court's understanding of the Law.

Third / The Government in its Response goes arround the Petitioner's claims, arguing against issues which the Petitioner did not raise in an attempt to manipulate the argument.

A respect for Justice, The Truth, and the Court's dignity ; should of detered the Government from responding just for sake of responding

Notably, The Government's argument in the Response about the illusory "terrorist attack" is just to "again" try to influence the mind of the Court to be against the Petitioner in its ruling and it has nothing to do with the truth, even the FBI agent made a confession in her interview with the associated press that the FBI knew that Petitioner was not Planning or intending to do any terrorist attack (FBI agent in the interview is one of the three FBI agents who first interviwed the Petitioner on July, 17th, 2015 in the Petitioner's apartment).

Section 2339A of Title 18 of the United STATES Code prohibits the provision of material support with knowledge or intent that the support be used to carry out a terrorist

attack 18 U.S.C § 2339 A, Section 2339B prohibits the provision of material support to designated Foreign Terrorist Organization (FTO) 18 U.S.C § 2339 B.

The Government would of charged the Petitioner with § 2339A if this case was deemed to be about a terrorist attack, but Petitioner was charged with § 2339B - Providing material support to (FTO), a crime which the Court of Appeals for the Fourth Circuit ruled that conviction for Conspiracy to Provide material support to the Islamic State of Iraq and Levant under 18 U.S.CS. § 2339B was not a predicate crime of violence as it did not have as element use, attempted use, or threatend use of physical force; See United States V. Khweis (4th Cir. August.11, 2020) 971 F.3d 453, 2020 U.S. App LEXIS 25407.

The Petitioner in this REPLY will respect the Court's intelligence, Knowledge and understanding of the Law.

## GROUND ONE

The Government wrongly here is trying to apply the harmless-error review and the jurisprudence of Strickland v. Washington (1984) to an issue which clearly does not adhere to such Standard.

The issue in GROUND ONE is "Structural Error" and is not subject to harmless-error review, niether it needs to meet the Standard set by Strickland V. Washington.

( 3 )

There is no need to show that: Have Mr. Simms and Mr. Treem give the Petitioner ( in their Joint opinion and Recomendation Letter) the right Factual Legal information about the privilege of communication between Petitioner and Mr. Swift (had the Petitioner interview with him); that Mr. Swift was going to represent the Petitioner, niether the Petitioner has to prove that " had Mr. Swift represented the Petitioner then the outcome of the case would of been different".

Mr. Simms and Mr. Treem deprived the Petitioner of his Sixth Amendment_ secured autonomy by providing False Legal information Which impaired the Petitioner's ability to exercise this right.

Here, the outcome is : Wasn't For Mr. Simms and Mr. Treem's error, Petitioner would of been able to exercise his Sixth Amendment right to consider having a counsel of choice.

"Because a client's autonomy, not Counsel's competence, is in issue, we do not apply our ineffective-assistance-of-Counsel jurisprudence , Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), or United States v. Cronic, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed 2d 657 (1984).

As the Supreme Court stated :

"Violation of a defendant's Sixth Amendment_ secured autonomy ranks as error of the Kind our decisions have called "Structural" ; When present, such an error is not subject to harmless-error review. See, e.g., McKaskle, 465 U.S., at 177, n. 8, 104 S. Ct.

(4)

944, 79 L. Ed. 2d 122 (harmless-error analysis is inapplicable to deprivations of the self-representation right, because" [t]he right is either respected or denied; its deprivation cannot be harmless"); United States v. Gonzalez-Lopez, 548 U.S. 140, 150, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006) (choice of Counsel is structural).

An error would count as structural when its effect are too hard to measure, as is true of the right to Counsel of choice. In a brief analysis of the Goverment's Response to Ground One, The Government wrote "According to Mr. Elshinawy, this advice prevented him from speaking to and retaining Mr. Swift as Counsel in place of Mr. Simms. And Mr. Elshinawy claims that this amount to a violation of his Sixth Amendment rights because he was not represented by the "Counsel of [his] choosing".

Whether the Government correctly understood the Petitioner's claim; It deems necessary to repeat one sentence from the Petitioner's motion to vacate, In Exhibit one

"13. Undersigned Counsel accordingly believes that there is a good faith basis to assert that Mr. Simm's advice to Mr. Elshinawy erroneously dissuaded him from exercising his Sixth Amendment rights to secure counsel of his choice".

The incorrect Legal information from attorney prevented the Petitioner from exercising his Sixth Amendment right to have or consider to have a Counsel of his choice. (Who is not a court appointed attorney).

( 5 )

The Government also wrote:" Mr. Simms explained in his Letter that Mr. Swift and his organization ( the Constitutional Law Center for Muslims in America ) had offered to assist with the case, but noted that the case did not appear to raise any significant constitutional issues that were within the organization's focus."

Here, this is clearly contradicting to the statement from Mr. Swift in his DECLARATION under the penalty of perjury, Mr. Swift stated in his DECLARATION:

"4. Upon receipt of the request for legal assistance from Mr. Elshinawy, CLCMA researched the information and court documents available to us located on Pacer. Based on our initial research, Mr. Elshinawy's case appeared to meet the general criteria of the types of case we take, and included issues of potential significance. Accordingly, I contacted Mr. Elshinawy's attorney of record, Stuart O. Simms, from Baltimore, MD, to discuss the case and coordinate a visit with Mr. Elshinawy."

Also, the Government wrote "Furthermore, It was Mr. Simms' understanding that Mr. Swift offered mere assistance on Mr. Elshinawy's case, and that Mr. Swift was "not seeking to be defense counsel of record"

Here, this also contradicts Mr. Swift's statement in his DECLARATION, Mr. Swift stated:

"5. On March 1, 2016, I spoke with Mr. Simms for about 20 minutes. I explained what CLCMA was, that we had been asked to evaluate Mr. Elshinawy's case for possible representation, and indicated I wanted to meet directly with Mr. Elshinawy. I proposed meeting with

( 6 )

Mr. Elshinawy in custody, either alone or with Mr. Simms, if he felt it necessary.

Mr. Swift, as he indicated in his DECLARATION is a factual witness to this matter and would testify in Court if it was deemed necessary.

Also, the Government wrote: "The Constitutional Law Center for Muslims in America deals primarily with Constitutional issues it is not clear what issue was present in this case"

Even though Petitioner does not need to show prejudice regarding this issue, However, this case carries a potential of significant Constitutional issues, Such as

Violations of / Miranda right / Freedom of Speech / Freedom of religion / Freedom of thoughts / The Free Exercise clause / The death threat / Discrimination / Probable cause determination )

Also, the Government wrote: "Mr. Elshinawy does not appear to have sought replacement Counsel or asked the Court to consider replacing Mr. Simms."

Here, Mr. Simms was not the only Lead attorney making decisions, It was always in coordination with Mr. Treem

First / Petitioner did attempt to find a different Counsel by reaching out to the Constitutional Law Center for Muslims in America while represented by Mr. Simms.

Second / As Petitioner indicated in his motion to vacate how he was intimidated by the statement of Mr. Treem Commenting on the Petitioner's Complaint about their performance, as Mr. Treem

(7)

wrote: "We are all he has between Freedom on one end and 20+ years in jail on the other end."

Here, Mr. Treem's statement made a clear indication that there will be some type of retaliation from attorneys if defendant sought replacement from the Court. A retaliation which would jeopardize the Petitioner's defense and as result will get the Petitioner 20+ years in prison.

This, added to the attorneys' behavior in their meetings with Petitioner while incarcerated. But there is no material recordings of these meetings so the Petitioner is not mentioning that part. The only material evidence as to the attorney's oppression and intimidation of the Petitioner can be found in the Court's video recording in the Re-Arraignment hearing on 08/15/2017 (see Docket Sheet at 119, 120), when Judge / Hollander asked the Petitioner if he agrees about the Statement of Facts attached to the plea. Petitioner paused for few moments and was almost about to say 'NO', but attorney Mr. Treem offensively "nudged" the Petitioner (knee to knee) disturbing the Petitioner from his thoughts and reminding the Petitioner of the continuous oppression and intimidation which was impairing and impaired the Petitioner's ability from stating to the Court that he is not guilty of these allegations in the Statement of Facts.

Also, the Government wrote: "After his conviction, he had another attorney review his case and file an appeal with the Fourth

(8)

Circuit, Which affirmed his Convictions."

Here, Petitioner in his appeal procedure had a break down in the relation with appeal attorney, Attorney Mr. Proctor refused to raise Certain issues Which Petitioner instructed him to raise, This break down is actually on Records in the Fourth Circuit For the Court of Appeals.

Petitioner wrote to the Court: "Appellant, Mohamed ELshinawy, is currently represented by Counsel, and his current Counsel refuses to raise a valid argument",

Petitioner also wrote: "Appellant has consistently objected to Counsel, but Mr. Proctor has refused (See Exhibit"1") "

This (Exhibit"1") is also attached to this REPLY as (Exhibit"1").

Petitioner also wrote: "Although Supplements are generally frowned upon When Appellants are represented by Counsel, there are exceptions to the rule When inffectiveness Conclusively appears on the face of the record. See United States v. Benton, 523 F. 3d 424, 435 (4th Cir. 2008); United States v. Baldouinose, 434 F. 3d 233, 239 (4th Cir. 2006) (noting ineffective assistance claims may be addressed on direct appeal 'only if the lawyer's ineffectiveness Conclusively appears From the record.") ; See Docket sheet in the Appeal Court - 06/12/2019 at 58-PRO SE SUPPLEMENTAL BRIEF by Mohamed ELshinawy. [18-4223].

Petitioner also wrote in another Filing in the Court of Appeal: "Question 2: Was Due Process violated When new CounseL was not ordered ? "

(9)

Petitioner also wrote: "This Court should have allowed Mr. Elshinawy the appointment of new Counsel. Appellate Counsel has never rigorously defended Mr. Elshinawy"; See Docket Sheet in the Appeal Court - 07/25/2019 at ※ 65 - PETITION for rehearing and rehearing en banc by Mohamed Elshinawy. [18 - 4223].

On Point 14 in the Government's Response, The Government went outside the scope of the discussion about the "Counsel of Choice" issue to mention some religion ranting which is :-

First / The Government would have to prove that the defendant meant what he wrote in these chats "the mens rea requirement", Even though all these chat conversations were private chats and Petitioner never shared any thing Publicly about it on social media, which Could be said that it might of affected the mind of the Public, Rather it was a private conversations with an educated person about religion, Like the Petitioner's brother.

Second / In order for speech inciting violence or lawlessness to fall outside of the ambit of the Free Speech Clause, the Court held that: ⓐ The speech must be directed at ... ⓑ Inciting "imminent lawless action" ⓒ The speech must also be likely to produce such action.

The Supreme Court overturned the convictions at issue because "the mere abstract teaching ... of moral propriety or even moral necessity for a resort to force and violence is not the same as preparing a group for violent action", And cannot be Punished by the Government in a manner consistent with the First Amendment.

( 10 )

In other words, for punishment of speech advocating violence to be constitutional, the speaker must both intend to incite a violent or lawless action and that action must be likely to imminently occur as a result.; See, e.g., Bible Believers v. Wayne cty., 805 F.3d 228, 224 (6th Cir. 2015) ("The right to freedom of speech provides that a state cannot proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action."); Blum v. Holder, 744 F.3d 790, 802 (1st Cir. 2014) (Finding that the Animal Enterprise Terrorism Act did not apply to expressive conduct protected by the First Amendment, including speech meeting Brandenburg's standard); United States v. Bell, 414 F.3d 474 (3rd Cir. 2005) (Finding that, while speech meeting Brandenburg's standard cannot be restricted, the speech at issue was false commercial speech that aided and abetted violations of the tax laws and, therefore, could be enjoined).

The court did not elaborate upon what it might mean for speech to be "likely to imminently produce" unlawful action.

Therefore, it is unclear how imminent the violence advocated must be in order for speech to be able to be proscribed.; See Holly, supra note 46 at 661 ("For instance, what does imminence meant? Does it mean within a few hours ... or does it indicate a longer time frame?")

( 11 )

In Hess v. Indiana, the Supreme Court provided some guidance regarding "imminence" pursuant to brandenburg. The defendant in Hess had been convicted of disorderly conduct. At an anti-war rally, he had been arrested for shouting "[we'll] take the [expletive] street Later". The Court overturned his conviction because his statement "amounted to nothing more than advocacy or illegal action at some indefinite future time" and his statement were not directed to any person or group of persons. In the Court's words, "there was no evidence or rational inference from the import of the Lanuage that his words were intended to produce and Likely to produce imminent disorder? See Buchhandler - Raphael, Supra note 46 at 1677 ("In Light of Hess, imminent means nothing but immediate action, Which is an almost impossible burden to satisfy."; Mare Rohr, Grand Illusion? the Brandenburg Test and Speech that Encourages or Facilitates Criminal Acts, 38 WILLAMETTE L. Rev. 1, 18-19 (2002) ("In Hess, the Court did appear to require that the interval between Speech and Called-For responses must be quite brief."); KENT GREENAWALT, SPEECH, CRIME, AND THE USES OF LANGUAGE, 209 (1989) (Finding that Hess's imminence interpretation was "very restrictive").

NAACP v. Claiborne Hardware. In that case, the Supreme Court overturned civil judgements against black defendants who organized a boycott of a white-owned businesses in a Mississippi town in order to protest discrimination and advocate for racial equality. According to the Lawsuit, one of the defendants, Charles Evers, had advocated the use of violence to enforce the boycott

against unwilling Participants. Plaintiffs argued that Evers' advocacy of violence should make him Liable to the Plaintiffs for their losses resulting from the boycott. The Court disagreed, stating "[this] Court has made clear... that mere advocacy of the use of Force or violence does not remove speech from protection of the First Amendment."

Third / It would be more adequate to have a religion debate in a church or a mosque (Place of worship) and not in the District Court, However, The Government is "Suspiciously" insisting to keep representing these private "chat" conversations, Like its meant to influence the Court in personal way as if it is a religion versus another religion and not a case of United States Citizen versus United State Attorney's office.

Lastly here, Petitioner would Like to make an important Correction, to what the Government wrote: "Thus, ultimately, the strength of the evidence was overwhelming, as acknowledged by Mr. Elshinawy's subsequent decision to plead guilty"

Here, the Correction is "Thus, Ultimately, the strenth of the influence of FBI agent David A. Rodski's threat through Mr. Kastina of killing the defendant in prison, the poor Performance and intimidation of attorney Mr. Treem violating the Petitioner's absolute right to choose the objective of representation, Conceeding to guilt regardless of Petitioner's objection to this guilt and the Failure to object to the prosecutor's misrepresentation of petitioner's statements, was the reason Mr. Elshinawy decided to plead guilty

instead of going to trial."

# GROUND TWO

---

Here, Petitioner is not sure how to clarify more about the issue of "Mr. Simms and Mr. Treem"'s Conflict of interest, However, a quick elaboration on the issue :-

①  The wrong Legal advise provided to Petitioner by "Mr. Simms and Mr. Treem's joint openion and recommendation" led to decline From Petitioner to consider another attorney to represent him, Which will assure that attorneys (Mr. Simms and Mr. Treem) will stay as counsels on records and will also result in granting of the CJA drafted budget, an interest Which is best for the attorneys' Financial situation and not for Petitioner's secured right.

②  Mr. Treem who is the Lead attorney and was part of this erroneous Legal advise is recently indicted on several charges including conspiracy to Falsify, make False entries in a record or documents, manipulating a witness to Sign an agreement to False Statement Which was sent to a district Judge, Conceal, Cover up to impede, obstruct official proceedings, misrepresentation, as alleged in Mr. Treem's indictment these crimes were with the intent to gain Financial benifits.

The alleged Conspiracy of Mr. Treem Started arround may 5. 2013 and continued through at least December 11, 2018, which overlaps and covers the entire time representing the Petitioner.

Here, the Government is the one who is putting Mr. Treem's honesty into question, The Sixth Amendment guarantees the effective assistance of Counsel, once this guarantee of efficiency is questioned (Like the situation here of a Criminal Indictment of the Counsel relating to his practice of the law), Then we cannot assume that the Petitioner was granted an effective assistance of Counsel as guaranteed by the Sixth Amendment.

The Government wrote: "Notably, in Mr. Simms extensive Letter detailing why he did not think having Mr. Swift participate with him would be advisable, he did not provide any opinion on whether Mr. Elshinawy should or should not seek replacement counsel"

Here, This allegation contradicts what Mr. Simms himself wrote,

Mr. Simms wrote: " Mr. Treem and I urge you to support this decision and further recommend that you decline Mr. Swift's visit request"

Lastly here, In a claim of attorney's Conflict of interest, when the interest on the other end of this conflict is the Petitioner's Sixth Amendment secured Autonomy, as the case here "the interest of considering to secure Counsel of choice", then harmless-error review or showing of prejudice standard is not applicable, because this is the type of error called " Structural".

# GROUND THREE

---

I. The Voluntariness Standard

In Hutto v. Ross (1976) 429 U.S 28,50 L Ed 2d 194,97
S. Ct. 202, Following the defendant's conviction and sentencing
, he petitioned for a writ of habeas corpus in a United States
District Court challenging the state Court's finding that his Confession
had been voluntary. The Supreme Court said that causation, in the
sense that confession was a result of the plea bargain, was
Not the test of voluntariness for determining the admissibility
of a Confession. Instead, Continued the Court, the test is whether
the Confession was extracted by any sort of threats or violence,
or obtained by any direct or implied promises, however slight,
or by the exertion of any improper influence.

First / Notably, the Government did not refute the specific threat
of "Killing the Petitioner in prison"'s allegation raised by Petitioner
against the FBI agent / David A. Rodski or that Mr. Rodski
(the agent sworn on criminal complaint) had extensive Communication
with Mr. Ronald Kasting, the Step father of the Petitioner's
wife , Mr. Kasting showed hostility toward Petitioner for
religious and racial reason, and previously threatend the
Petitioner to use his relation and connection with Law enforcement
Personnels to retaliate against Petitioner for wanting to marry
who is today the Petitioner's wife.

(16)

Here, along with the details in the motion to vacate, Petitioner made this type of claim which includes (( Context, Facts, witnesses, identification of the persons responsible for the alleged unlawful Conduct, Record, Time, Place, the harm that was caused to Petitioner from allegation )).

Second / Regarding the Petitioner's Confession, The plea agreement would be considerd to be the only Confession obtained from Petitioner, Petitioner never Confessed to these crimes in any other situation, Even after Petitioner was intimidated by FBI's interview in the Petitioner's apartment on July 17th, 2015, Which "OFcourse" was "not recorded" as alleged by Government, and after the additional three meetings with FBI agents (which Petitioner conducted based on the intimidation and threat on July 17th visit, which deems every statement the Petitioner made to FBI agents as "involuntary statements"), Even with that, Petitioner's Statements to FBI does not include a Confession ( The Recorded Statements ).

The Government wrote: " Any claim that could have been raised on direct appeal, but was not, is procedurally defaulted. Bousley V. United States, 523 U.S. 614, 621 (1998)."

Here, There are reasons Why this claim wasnot raised on direct appeal
(1) As the Supreme Court Stated in Garza Vs. Idaho [2019] 586 US, 139 S. Ct, 203 L. Ed 2d 77, 2019 LEXIS 1596 :
" This Court has repeadtly stated that Collateral review is a better avenue to address involuntariness and ineffective -

(17)

assistance claims, as these claims often require extra record materials and present conflicts with counsel. See generally Massaro v. United States, 538 U.S. 500, 123 S. Ct. 1690, 155 L. Ed 2d 714 (2003)."

(2) Petitioner was still afraid of the law enforement's threat "Killing the Petitioner in prison", noting that the appeal process started right after Petitioner was transfered to federal prison.

(3) Petitioner actually did provide his appeal attorney with documents which included the involuntary consent to agreements, involuntary statements, and the threat against Petitioner, but appeal counsel did not act upon the informations and didnot raise these claims, which resulted in undisputed disagreement between Petitioner and his appeal attorney as Petitioner submitted this disagreement in the court of appeal's records during the appeal procedure, as refered to in Ground One in this REPLY.

The Government wrote: "The mere existence of threats, violence, implied promises, improper influence, or other coercive police activity, however, does not automatically render a confession involuntary." United States v. Braxton, 112 F.3d 777, 780 (4th Cir. 1997)."

Here, this is not mere existence of threat, the threat here is specific and did not exist till defendant heard of it from his wife based on FBI agent Mr. Rodski and Mr. Kastina's communication.

The threat of Killing the Petitioner using another incarcerated

(18)

person is not "mere threat", It is the type of threat that prevented the defendant from voluntarily or freely exercise his absolute right to defend him self in Court against the Government's accusations.

The Government wrote ;" The defendant broadly claims that his background Led him to be particularly afraid of the police but does not allege anything that would be considered " coercive police activity" and certainly nothing that would indicate that his " will ha[d] been overborne or his capacity for selfdetermination critically impaired"

Here, In the motion to vacate, Petitioner specifically claimed that his background combined with the FBI's way of interrogation and the threat he heard of - overwhelmingly made the Petitioner's capacity for selfdetermination critically impaired.

The Government wrote:" Mr. Elshinawy felt comfortable enough to Lie repeatedly to law enforcement during these interviews also undermines his claim that his will was overborne"

Here, Petitioner already explained that he had these meetings based on the fear of FBI's retaliation or harm if Petitioner refused to Conduct these meetings, However, Petitioner still did not Lie to FBI agents, what happend is that; Since the Petitioner's statements to FBI agents was an indication of his innocence of the crimes alleged in the indictment, The Government moved to elevate tactics which is to scare the Petitioner in coordination with "accused of Corruption" Attorney Mr.Treem till a plea was

(19)

obtained.

The allegation that Petitioner Lied to FBI agents does Not make sense or even Logical, For Example; Petitioner on July 17th, 2015 - Logged into his PayPal account in front of the FBI agents and FBI agent toke pictures of the account details on his Cell phone, this happend at the very First interview by FBI agents, but Later, FBI agent claimed that the Petitioner Lied about the amount of money he recieved in the very Same PayPal account which agents toke pictures of.

It is notable here, that the "repeated" statements made by Petitioner to FBI agents "Which indicate his innocence of Indictment charges" are deemed to be a Lie by the Government because these repeated insisting statements do not Support the Government's case against Petitioner, But the plea agreement Which was obtained after threat, Poor and unreasonable perFormance from Petitioner's attorney is deemed as "Legitimate" by the Government.

It is unFortunate and sad reality about What happend to Petitioner in this Case by Such acts which were driven and motivated by different interests, where Justice, niether The truth was one of it.

The show of Prejudice was already mentioned by Petitioner in his motion to vacate, Petitioner stated; "Had the defendant been free to Speak up without the Fear of being Killed - The entire proceedings in this case would oF been different".

Because Petitioner would Not plead guilty and would of been able to

go to trial and most Likely show a valid reason to the Court
to dismiss the Case before it even proceeds to trial.

# GROUND FOUR

---

Whether the Government understood the Constitutional issue
raised on Ground Four, It deems necessary to explain it.
The Government wrote:" Mr. ELshinawy claims that his Counsel was
ineffective For advising him to waive his preLiminary hearing after
he was arrested on a Criminal Complaint "
Here, Petitioner is raising the claim that his attorney waived the
PreLiminary hearing without the Petitioner's Knowledgable Consent.
The Petitioner is claiming that attorney did not advise him about
the preLiminary hearing at all, and that the waiver was not
based on Petitioner's Knowledgable consent, in addition to
that, Petitioner indicated the willingness to challenge the Criminal
Complaint and all allegation against Petitioner at the time.
The Government wrote:" However, deFendants are not Constitutionally
entitled to preLiminary hearings. See Gerstein V. Pugh, 420 U.S.
103, 123(1975)."
Here, And in the same very case cited by the Government, The
Supreme Court made it clear that even though a preLiminary
hearing is not it selF a Constitutionally guaranteed proceeding,
a probable-Cause determination oF some sort is Constitutionally
mandated; See Gersein V. Pugh, 420 U.S. 103, 95 S. Ct. 854,

( 21 )

863, 43 L. Ed. 2d 54 (1975) ("we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.")

Here, the Petitioner's only probable cause determination proceeding was the preliminary hearing, so the waiver of such a Judicial determination must be knowing, intelligent, and voluntary because a waiver of constitutional right must be knowing and voluntary; See Johnson V. Zerbst, 304 U.S. 458, 58 S. Ct. 1019, 1023, 82 L. Ed 1461 (1938) ("waiver is ordinary an intentional relinquishment or abandonment of a known right or privilege").

Petitioner here is challenging the validity of the waiver it self of the Preliminary hearing.

"Most Fundamentally, Courts agree that defendants retain the right to challenge whether the waiver itself is valid and enforceable. For example, on the grounds, that it was unknowing or involuntary"; See, e.g., United States V. Brown, 892 F. 3d 385, 394 (CADC 2018).

It is important to mention that petitioner was interviewed many times and was given a "target of investigation" letter, Petitioner was ready to Conduct a cross examination of FBI agents and of the Criminal Complaint which contains many errors and wrong information which Petitioner till this day can still prove it to be wrong

(22)

The Government wrote: "Mr. Elshinawy makes no showing of how he was prejudiced by the waiver of preliminary hearing"

Here, since the Preliminary hearing was the only Judicial proceeding of Probable cause determination available to the Petitioner, then there is no need to show prejudice.

As the Supreme Court reaffirmed this principle, that when Counsel's error cause the client the deprivation of a whole proceeding, Then there is no need to show Prejudice to be successful on ineffective assistance of Counsel Claim.

The Supreme Court In GARZA vs. IDAHO [2019], stated:
"This Court has made clear that when deficient Counsel causes the loss of an entire proceeding, it will not bend the presumption -of-Prejudice rule simply because a particular defendant seems to have had poor prospects. See, e.g., Jae Lee v. United States, 582 U.S., 137 S. Ct. 1958, 198 L. Ed. 2d 476 (2017). We hew to that principle again here."

In addition to the presumption of prejudice at issue, Petitioner actually did show the prejudice caused by the unknowing waiver of preliminary hearing, Petitioner stated in his motion to vacate: "the effect of such waiver is that the Complaint will remain in place Leading to an indictment."

The waiver cost the Petitioner the indictment even when Petitioner had a chance to challenge the Criminal Complaint which was provided to the grand Jury as basis to issue the indictment.

(23)

The Government in the Response is conceeding to this Prejudice as well, The Government wrote: "there was ample evidence of Mr. Elshinawy's guilt, detailed in the Criminal Complaint, Further at his detention hearing, and Leading to the grand Jury's return of an indictment ", Here, The Government is admitting that this un challenged criminal complaint was the main reason which Led to the grand jury's return of indictment.

The Government wrote: " Finding claim of ineffective assistance For attorney's waiver of Preliminary hearing meritless because defendant entered a Knowing and voluntary Plea "

Here,

First/ Petitioner in his petition is challenging the validity of this plea agreement

Second/ Petitioner actually did plead "Not Guilty" to all counts in the first arraignment hearing; See Docket Sheet -01/29/2016 , item #24.

So the argument about the strategy that the attorney waived the preliminary Hearing because Petitioner reached a plea deal and was going to plead guilty does not stand here.

The Government wrote: "As a result, it is difficult to imagine (and Mr. Elshinawy does not allege) What could have happend at a preliminary hearing to change the circumstances of his case."

Here, Petitioner and with good faith does not Know if the Government did not understand some of Petitioner's argument or

(24)

or the Government is pretending not to understand.
Petitioner in his motion to vacate stated:" It would of been
intelligent of the defendant to go through the preliminary hearing
has he knew that such procedure exist and the right of cross
examination and the introduction of evidence and eventually the
potential of dissmisal of Criminal Complaint or at least the
dissmisal of some complaint charges before it reaches the grand
Jury".

Finally here, and with the continuous suspicious strategy from the
Government to underestimate the Court's intelligence in this Case,
The Government wrote:" So, there is also no reason to believe that
a preliminary hearing would have happend had Mr. Elshinawy not
waived "

Here, It is a very easy task for District Court to access the docket
Sheet of the Petitioner to know that preliminary hearing was
actually scheduled before the return of indictment, and if it
wasn't for the attorney's waiver then preliminary hearing was
going to be Conducted.

The Court can view this order on the Docket Sheet
- Date filed 12/15/2015, at # 10 - ORDER setting preliminary
Hearing date as to Mohamed Elshinawy. Signed by Magistrate
Judge Beth P. Gesner on 12/15/2015. (stds, Deputy Clerk)
[1:15-mj-02716-TJS] (Entered : 12/15/2015)
In this Letter, United States Magistrate Judge / Beth P. Gesner
Scheduled the preliminary hearing for Monday, December 28, 2015

at 12:00 noon,

Petitioner "as alleged" on Docket Sheet was indicted by grand jury on January 13, 2016 as it is "Suppose to be" a "true Bill".

# GROUND FIVE

Here, The Government wrote: "ELshinawy claims that his Counsel was ineffective for not challenging the defendants intent of the charges against him"

Here, Petitioner did not raise the issue exactly in this way, Petitioner clearly is raising two issues in this ground

① The Counsel did not adhere to the Petitioner choice about the objective of the defense / the proper way to protect the petitioner's own Liberty, See ABA Model Rule of Professional Conduct 1.2 (a) (2016) ("a Lawyer shall abide by a client's decisions concerning the objectives of the representation").

② The Petitioner's attorney conceeded to the admission of guilt regarding the mens rea requirement over the Petitioner's intransigent objection to that admission

The First Issue / Petitioner's attorney did not adhere to the Petitioner's objective of collecting the transcript of other social media accounts to prove his innocence from the "guilty mind" requirement.

( 26 )

As Supreme Court Stated:

The choice is not all or nothing: To gain assistance, a defendant need not surrender control entirely to counsel. For The Sixth Amendment, in "grant[ing] to the accused personally the right to make his defense," "speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant." Faretta, 422 U.S., at 819-820, 95 S. Ct. 2525, 45 L. Ed. 2d 562; See Gannett Co. v. DePasquale, 443 U.S. 368, 382, n. 10, 99 S. Ct. 2898, 61 L. Ed. 2d 608 (1979) (the Sixth Amendment "contemplat[es] a norm in which the accused, and not a lawyer, is master of his own defense").

The claim here by Petitioner is a claim of "Structural error" which is not subject to harmless-error review. An error is structural if it is not designed to protect defendants from erroneous conviction, but instead protects some other interest, such as "the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own Liberty." Weaver, 582 U.S., at 137 S. Ct. 1899, 198 L. Ed. 2d 420 (citing Faretta, 422 U.S., at 834, 95 S. Ct. 2525, 45 L. Ed. 2d 562)

It is the Petitioner's prerogative, not Counsel's, to decide on the objective of his defense.

The Counsel's following of the Petitioner's choice about the objective of his defense is critical because:-

First / That was the Petitioner's reserved right.

( 27 )

Second / Because adhering to the Petitioner's choice about the objective of defense by collecting other social media accounts will show the Court that Petitioner's state of mind while he was having chat conversations between him and his brother, or ELKhodary, was not the state of mind required to find the Petitioner guilty on the charges he is accused of.

To explain more,

Going to the application of the decision of supreme Court Case ELONIS vs. United States [2015], 575 U.S. 723; 135 S. Ct. 2001, 192 L. Ed. 2d 1; 2015

The Court in this Case spoke about the mens rea and the general rule that a guilty mind is a "necessary element" in the indictment and proof of every crime, this does not mean that Petitioner must know that his conduct is illegal, but the Petitioner must have Knowledge " the facts that make his conduct fit the definition of the offense.

The Court Stated:

"wrongdoing must be conscious to be criminal," and defendant must be "blameworthy in mind" before he can be found guilty." Morissette v. United States at 252,72 S. Ct. 240, 96 L. Ed. 288.

The "general rule" is that a guilty mind is "a necessary element in the indictment and proof of every crime." United States V. Balint , 258 U.S. 250, 251, 42 S. Ct. 301, 66 L. Ed. 604, T.D. 3375.

" This does not mean that a defendant must know that his conduct is illegal, but a defendant must have Knowledge of

" the Facts that make his conduct Fit the definition of the offense." Staples v. United States, 511 U.S. 600,608,n.3, 114 S. Ct. 1793, 128 L. Ed. 2d 608.

ELONIS' Court also stablish that, The "Central thought" is that a defendant must be "blameworthy in mind" before he can be found guilty, a concept courts have expressed over time through various terms such as mens rea, scienter, malice, a forethought, guilty knowledge, and the like.

Also the Court stablish that Federal criminal Liability generally does not turn solely on the results of an act without considering the defendant's mental state. That understanding "took deep and early root in American soil" and Congress Left it intact here "Wrongdoing must be conscious to be criminal." Morissette, 342 U.S., at 252,72 S. Ct. 240 96 L. Ed. 288.

After this fundamental standard, the Court in ELONIS Left a question open for a future determination - " the question of whether mental state of recklessnes could suffice for criminal Liability", However, The Court made it clear that "negligence is not sufficient to support a conviction under section 875(c)" Here, The Argument which Petitioner wanted to present to the Court or the objective of the defense "Which Petitioner instructed his attorney to follow" was to prove to the Court "by material records" that the mens rea requirement for criminal Liability under 18 U.S.C.S.§2339(B),(C) was not met in the Petitioner case as to the "mens rea's Level of "Knowingly"; Rather it was "negligently"

(29)

- Which is not the same standard as "Knowingly" or "Intentionally"; See (Black's Law Dictionary 5th ed. 2016)

- Elements of Crime. (1909) The constituent parts of a crime - usu. consisting of the actus reus, mens rea, causation - that the prosecution must prove to sustain a conviction.

- Mens rea (guilty mind) (18c) is the state of mind that the prosecution, to secure a conviction, must prove that defendant had when committing a cirme. Mens rea is the second of two essintial elements of every crime at common law, the other being the actus reus under the Penal Code, <u>the required levels of mens rea - expressed by the averbs - Purposely ، Knowingly ،</u> <u>recklessly ، and negligently - are termed "Cupability requirements".</u>

Here, to elaborate, and relative to what the Government wrote: "Mr. Elshinawy does not identify any particular facebook conversations or suggest how additional portions of his facebook conversations would have in any way altered or undermined the extensive facebook transcripts that demonstrated the defendant's knowledge and intent ،

Here, Petitioner made a clear refrence in his motion to vacate that he instructed his attorney to collect "the transcript for other facebook accounts used by defendant in the same time of using the facebook account which government used as the main witness / evidence against defendant".

Here, and with good faith, Petitioner does not know if the Government did not understand the Petitioner's argument or

(30)

is pretending not to understand.

"Other Facebook accounts" means "different, additional" Facebook accounts, and is not as the Government alleging in the Response "additional portions of his Facebook conversations" Ofcourse the Government is refering to one Facebook account, which was the body of evidence against Petitioner.

The Government have records of these different social media accounts, Have the Petitioner's attorney obtained these records, then Petitioner would of been able to prove to the Court or to the Jury that Petitioner was masking his real state of mind in all his Social media accounts including Facebook, and none of the Petitioner's Conversations on these online platform represent the real mind or intent of the Petitioner, it was all a game to Petitioner.

Petitioner had several Facebook accounts (Which the Government have records of), In one of the Petitioner's Facebook accounts, Petitioner was playing the role and pretending to be a Jewish man, and in another account the Petitioner was Pretending to be a christian, and in another account pretending to be an athiest, and in another Petitioner was playing the role of someone Who does not care about religions at all and has different interests.

Facebook consumed a very significantly small time from Petitioner as Petitioner was using many different social media platforms at the same time.

(31)

The Petitioner's addiction to these online chats, combined with his understanding about different religions, philosophies and the different ways of life - allowed him to be able to trick almost everyone online as the "online chats" appeared to Petitioner to be nothing more than an illusory world that ends when petitioner shut down his computer.

Just looking at the factual statement "not an opinion" in the Expert Report of Dr. Sageman - Page 3 - Footnote 3: " It is apparent from the discovery that Mr. Elshinawy accessed PalTalk, a video, audio, and text - based chat program, nearly every day from June 12, 2010 to August 17, 2015. See Exhibit [2]."

This is just as far as Government records recoverd, Petitioner since 2005 fell into these online chat addiction.

For Example: Petitioner would chat online with his brother about the islam while in same moment chatting with another individual about how Islam sound to be an oppressive religion and how christianty is better while chatting on different account in the same time about how all religions are ment to control people while pretending to be a Jewish person on different account...etc.

The Petitioner's state of mind while communicating on Facebook was a "play" type on other chatters' mind "mind games", seeking to see different people's reactions to certain conversations. Petitioner had "online friends" from all different backgrounds, religions, and almost each one of them would think that petitioner has the same interests and is the same as them.

(32)

The Petitioner's real allegiance was to his desires at the time; To smoke weed and waste time online playing mind games. These "mind games" would escape once in a while to Petitioner's real life as of playing these "mind games" with his wife sometimes, Petitioner's wife and ex wife can witness to that, Petitioner would play these "mind games" about religion, and other things which is sensetive like sexuality ... etc.

Just to give the Court a better idea about the Petitioner's "Extreme addiction" to online chats, Petitioner at some point had over 3000 "Three Thousands" different email accounts, (some programes creat Email accounts by automatically Filling the Email with random informations to Save the time of creating the Email account).

Petitioner's real mind set and intent was nothing but the Fulfilling of his desires at the time and wasting time online, and his allegiance was only to his desire of playing "mind games" online.

The reason Petitioner is claiming that these other Social media records are very significant because :-

① These records will contradict the apparent mens req which the Government is assuming that petitioner had from a significantly small portion of the overall Petitioner's social media Conversations.

② These Records are "Material Facts" which could of been obtained had the attorney asked for it.

(33)

"A Fact is material if the existence or non-existence thereof could lead a jury to different resolutions of the Case". See Thomas v. FTS USA, LLC, 193 F. Supp. 3d 623, 2016 (citing Liberty lobby, 447 U.S at 428).

(3) The Integrity and honesty of the United State Attorney's office require them to provide the Court with the fair chance to understand the Petitioner and not hold away such records which will clearly and overWhelmingly show this type of "extreme addiction" of Petitioner's masking of his thoughts and playing those mind games online.

Petitioner explained to his attorney this objective of defense and instructed him repeadtly to follow it and adhere to it, but attorney failed to do so, Which amounts to a structural error because this was the petitioner's choice about the proper way to protect his own Liberty.

Petitioner might of been negligent or morally disturbed to be playing these mind games in his online Conversations but Surely he did not intend to Support any terrorist groups or harm any one.

Second Issue : Petitioner's attorney conceeded in his filings to the Court, to the mens rea required to obtain Convictions, Against and over the petitioner's intransigent objection to that admission.

Petitioner, verbally and by written documents provided to his attorney the objection to this admission of "intent"

(34)

required to prove the accusations against petitioner.

Counsel's admission of a client's guilt over the client's express objection is error structural in kind. See Cooke, 977 A. 2d, at 849 ("Counsel's override negated Cooke's decisions regarding his Constitutional rights, and created a structural defect in the proceedings as a whole.") Such an admission blocks the defendant's right to make the Fundamental choices about his own defense. And the effects of the admission would be immeasurable, because a jury would almost certainly be swayed by a lawyer's concession of his client's guilt.

With FBI agent's threat, attorney's intimidation and threat of retaliation if Petitioner sought attorney's replacement and the rejection from attorney to follow the proper way which Petitioner choosed to protect his own Liberty, Petitioner found no Safe way but to plead guilty instead of going to trial, So all the parties involved in the Petitioner's case could obtain the benefits they sought from this case, From Financial benifits to Political to Job related benifits, Now with these benefits being obtained, Petitioner is assuming that he is now "more safely than before" can defend himself and explain how his Convictions were erroneous.

# GROUND SIX

Here, Petitioner is claiming that Counsel was ineffective because he Failed to announce that the Government breached the Plea agreement Which prejudiced the Petitioner and cost him the Loss of entire proceeding

First / Attorney was ineffective for his Failure to announce the Government breached the plea agreement.

To Explaine :-

(A) Plea bargains are essentially contracts
Mabry v. Johnson, 467 U.S. 504, 508, 104 S. Ct. 2543
, 81 L. Ed. 2d 437 (1984)

(B) Plea Agreements amount to, and should be interpreted as, a contract under state Contract law. Id., at 883
(Ricketts v. Adamson, 483 U.S. 1, 5, n.3, 107 S. Ct. 2680, 97 L. Ed. 2d 2 (1987)

(C) The 4th Circuit approach regarding the interpretation of Plea agreements, As Court Stated :

"We Construe plea agreements in accordance with principles of Contract Law so that each party receives the benefit of its bargain. United States v. Ringling, 988 F. 2d 504, 506 (4th Cir. 1993)"

"A contract must be construed as a whole, and effect given to every clause and phrase, so as not to omit an Important

(36)

Part of the agreement." Baltimore Gas & Elec. Co. V. Commercial
Union Ins. Co., 113 Md. App. 540, 554, 688 A. 2d 496
(Md. Ct. Spec App. 1997)

(D) The 4th Circuit approach regarding the interpretation of
the language of Contract:

"Under 'ordinary principles of Contract law', we enforce a
Contract's "plain language in its ordinary sense."; See
Bynum v. Cigna Healthcare of North Carolina, Inc., 287 F. 3d
305, 313 (4th Cir. 2002)(internal quotation marks omitted)."

" Courts do not write the Contracts of parties retroactively,
but merely construe the terms of the Contract the Parties
have previously signed. United States V. Race, 632 F. 2d 1114, 1119
(4th Cir. 1980)."

" A court applying Maryland contract law "gives the words
of the Contract their ordinary and accepted meaning, looking
to the intention of the parties from the instrument as
a whole." White Pine Ins. Co., 233 Md. App. at 498 (quoting
Phila. Indem. Ins. Co. V. Md. Yacht Club, Inc., 129 Md. App.
455, 467-68, 742 A. 2d 79 (1999)."

"A Contract must be construed according to the plain meaning
of its terms". 11 Samuel Williston & Richard A. Lord, A
Treatise on the law of Contracts §32:3 (4th ed. 1999)

"When interpreting the responsibilities of the Government under
the plea agreement, we will "enforce a plea agreement's plain
Language in its ordinary sense". United States V. Linder,

(37)

552 F.3d 391, 393 n. 1 (4th Cir. 2009)

Here, at issue, According to the ordinary meaning of this term in the plea agreement: "This office and the Defendant agree that with respect to the Calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustment set forth in the United State Sentencing Guidelines will be raised or are in dispute" <u>Is Contradicting the ordinary meaning of another term in the same agreement;</u>" This office reserves its right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider all relevant information concerning the Defendant's background, character and Conduct".

(E) The Plea term is Ambiguous

The Government wrote;" Elshinawy simply misunderstands the plea agreement"

I. The Test of Ambiguity

In Maryland, the interpretation of a contract, including whether it is ambiguous, is a question of law for the Court. Walton V. Mariner Health of Maryland, Inc., 391 Md. 643.660 (2006). "Maryland Courts Follow the law of objective interpretation of contracts, giving effect to the clear terms of the contract regardless of what the parties to the contract may have believed those terms to mean." Towson U. V. Conte 384 Md. 68, 78 (2004). "[T]he true test of what is meant is not what the parties to

the Contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Dennis v. Fire & Police Employees' Ret. Sys.,* 390 Md. 639, 656-57 (2006) (citation and internal quotation marks omitted).

"Language is ambiguous only when it can be reasonably interpreted in two or more ways." *Allstate Ins. Co. v. Runyon Chatterton,* 153 N.C. App. 92, 94-95, 518 S.E. 2d 814, 816 (1999). However, a term is not ambiguous "simply because the parties contend for differing meanings to be given to the language"— Rather, ambiguity arises only when each proffered interpretation is reasonable in context. *Id.*

"In fact, ambiguity arises only if the language is reasonably susceptible to more than one meaning by a reasonably prudent layperson." *Walker v. Fireman's Fund Ins. Co.,* 66 Md. App. 687, 692, 505 A. 2d 884, 886 (1986) (internal citation omitted); *See also Interstate Fire and Gas. Co. v. Dimensions Assurance Ltd.,* 843 F.3d 133, 138 (4th Cir. 2016) (citing *Walker*). Even though such ambiguity may be patent or latent ... Patent ambiguity exists when the language of the contract itself reveals that it can be interpreted in more than one way ... Latent ambiguity, although less common than patent ambiguity, arises where language "[although]" appearing perfectly at the time the contract [is] formed, because of subsequently discovered or developed facts, may reasonably be interpreted

in either of two ways." Lion Assocs. LLC v. SwiftShips Shipbuilders, LLC, 475 F. App'x 469, 501 (4th Cir. 2012) (unpublished) (internal citations to Virginia law omitted). Furthermore, the Supreme Court of Appeals has explained that a latent ambiguity ' arises when the instrument upon its face appears clear and unambiguous, but there is some collateral matter which makes the meaning uncertain." See Flangan V. Stalnaker, 216 W. Va. 436, 607 S. E. 2d 765 (W. Va. 1976) (citing Collins v. Treat, 108 W. Va. 443, 152 S. E. 205, 206 (W. Va. 1930). Ambiguity arises where an "agreement is inconsistent on its face", or when the "parties can have reasonable differences in construing [its] terms". Mountain State Coll. V. Holsinger, 230 W. Va. 678, 742 S. E. 2d 94, 102 (W. Va. 2013) (per curaim)

Here, at issue, The Plea agreement contains ambigious terms, Because two different terms in the agreement when it is interpreted to its ordinary meaning – It will appear to a reasonable prudent layperson to be two terms contradicting one another regarding the same objective of the term, So we can say here, That one term is favoring the Petitioner's position and the other is favoring the Government' position regarding the same objective

(F) The 4th Circuit's jurisprudence regarding the ambiguity of Plea agreement's terms

The Court Stated; "When the lanuage of a plea agreement

(40)

is ambiguous, we construe it against the government, See
United States v. Under Seal, 902 F. 3d 412, 417-18 (4th Cir. 2018)"
6 "Where a plea agreement is ambiguous in its terms, the
terms must be construed against the Government." United
States v. Harvey, 791 F.2d 294, 303 (4th Cir. 1986).
Because of "Constitutional and supervisory concerns", the
Government is held to a greater degree of responsibility than
the defendant for imprecision or ambiguities in plea agreements.
Here, at issue, applying this principle, then the Government here
is held to its promise in the plea agreement it made to
Petitioner, which is not to bring or raise any other offense
character, or sentencing guideline factors to the Court, (other
than what the court already knew from records).

(G)   The Goverment's Breach

" The Government breaches a plea agreement when an express
or implied promise or assurance it made to induce the plea
remains unfulfilled See id.; United States v. Martin, 25 F. 3d
211, 217 (4th Cir. 1994) 6

The Government breaches a plea agreement when it fails to
fulfill a promise that "can be said to be part of the
inducement or consideration" for the plea agreement. Santobello
   v.   New York, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed
2d 427 (1971). 6

"To prevail in an action for breach of contract, a plaintiff
must prove that the defendant owed the plaintiff a contractual

( 41 )

Obligation and that the defendant breached that obligation".
Taylor V. NationsBanK, N.A., 365 Md. 166, 175 (2001).
Here, at issue, It is clear that When the Government
introduced the proffer information "the misrepresented information"
, and the personal video of the Petitioner and his wife,
by that, it breached the Plea by violating and failing to
Fulfill a promise, Also here, The allegations presented by
the Government at the Sentencing hearing such as the
"misrepresented" Proffer information was Not Known to the
Court up to the sentencing hearing, These information also
included allegations of other offenses other than the offense
stipulated in the plea agreement, more over, The Government
admitted in their Response that the Court toKe these allegations
into consideration as relative to the Petitioner's sentence factors.
It is important to note here regarding the video of Petitioner
with his wife, other than that this video should of been private,
Presenting this video in Court violated the Petitioner's wife's
Constitutional right to exercise her religion, because Ms. Rowe in
this video was not dressed in the proper manner required by her
religion in order for other men to be able to see her, Ms. Rowe
has a standard that she practice in her religion, currently and in
the time of showing the video to the District Court, Ms. Rowe
never gave her consent to the use of such video in the District
Court, more than that, Ms. Rowe in her letter to Judge/ Hollander
indicated that Petitioner has the habit of being "sarcastic" which

( 42 )

indicates that even the apparent event in this video does not represent the real narrative.

However, It might of been logical from the Government's prospective, In a case like the Petitioner's, very weak in terms of evidence, very violating in terms of Laws, Policies and rules, very discriminating in terms of fairness, To find nothing better than a private video between Petitioner and his wife to provide to the Court.

(H) The showing of Prejudice

(1) The Court never claimed that it did not consider some of these "misrepresented" proffer statements as in relation with determining the overall Petitioner's sentence

(2) The attorney failure to announce the Government in breach Cost the Petitioner the loss of entire proceeding.

Here, the Government wore: "Moreover, Mr. Elshinawy makes no allegation" that there is a reasonable probability that, but for Counsel's unprofessional errors, the result of the proceeding would have been different.", This simply contradicts what the petitioner alleged in his motion to vacate, Petitioner stated: "Has the attorney announced the Government to be in breach of plea agreement, the Court would of made a determination - entire procedure the defendant was deprived of due to the unreasonable poor performance from attorney".

IF the attorney announced the Government to be in breach of plea agreement, Then the Court would of conducted a hearing for this matter, or at least make a determination, United States V.

(43)

Frazier, 213 F.3d 909 (7th Cir. 2000)(evidentiary hearing required to determine if Substantial breach of plea agreement has occurred); United States v. Ataya, 864 F.2d (7th Cir. 1998) (Defendant is entitled to Pretrial hearing under due process clause to determine if, in fact, breach occurred, and whether breach was Substantial in Light of parties' reasonable expectations upon entering of plea agreement).

It is important to add here, that when Counsel's error cause the defendant the deprivation of a whole proceeding, then there is no need to show prejudice to be successful on ineffective assistance of Counsel claim.

The Supreme Court In Garza vs. IDAHO [2019] stated:
" This Court has made clear that when deficient Counsel causes the Loss of an entire proceeding, it will not bend the presumption-of-prejudice rule simply because a particular defendant seems to have had poor prospects. See, e.g., Jae lee v. United States, 582 U.S., 137 S. Ct. 1958, 198 L. Ed. 2d 476 (2017). We hew to that principle again here"

(I) The Proffer
   (1) United State attorney / Christine Manuelian - Committed official misconduct (Ethical Crime)
To Explain,

First, in the Proffer, the Petitioner was trying to help the Government by providing information which petitioner observed from his extensive use of the internet.

(44)

However, Instead, United State attorney toke advantage of the Petitioner's situation of being represented by clearly ineffective attorneys whom one of them, Mr. Treem- is currently accused of being on criminal conspiracy and was under investigation at the time of representing the Petitioner, United State attorney also toke advantage of the media's defamation of the Petitioner and the media's talk about terrorism, also toke advantage of the Court's "high" assumption about the rightousness of United State attorney, The United State attorney in this case committed an ethical crime by misrepresenting to the Court the Petitioner's statements at the proffer.

Even after the Expert "Dr. Sageman"'s attempts to convince the petitioner to pretend to admitting the intent to carry out a terrorist attack "the story of Petitioner's change of heart", Petitioner still in the Proffer meeting did <u>Not</u> admit to this intent.

The United State attorney in this case cut half of the Petitioner's statements in her representation of the Proffer information and statements, United State attorney presented portion of the Petitioner's statement which alone would appear to incriminate the petitioner and left off the rest of the statement which if added to the previous portion would overall acquit the petitioner from accusation.

Most Notably, is the illusion about the Petitioner wanting or intending to conduct a terrorist attack.

(45)

What Petitioner stated in Proffer is that he fraudly pretended to agree with this unknown individual about whatever this unknown individual was saying in order to obtain money So Petitioner can spend it on his expenses at the time (rent, smoking weed, fixing the car, the online chat "siging into websites with paid premium accounts" .. etc )

The United State attorney made it sound that Petitioner confessed to this intent (agreement to conduct terrorist attack ), when Petitioner clearly explained in the Proffer meeting how he successfully scammed and tricked this unknown individual using the Petitioner's knowledge about religion, the middle east, the online chat tactics and fair amount of "tech" knowledge. Another Example of this misrepresentation of the Proffer Statements is the videos of how to make a bomb, when Petitioner stated that because the sender of the videos can online-check through the uploading link to see if Petitioner actually downloaded the video - So Petitioner explained that he had to click on "download" So the upload website "link" will show that the video was downloaded - because if Petitioner did not click on "download", then it will show as "zero" downloads to the sender and may compromise the Petitioner's scamming and trick game.

What is also notable to mention here is the Government's admission of their failure to decrypt some files on the Petitioner's computer, In the Proffer, Petitioner explained

(46)

to the United State attorney and the other agents how
the Petitioner encrypted these files - However, later, and
because the United State attorney seems not to care to
understand how the encryption happend - The United State
attorney accused the Petitioner of Lying about how to encrypt
the files - By saying "mockingly" that petitioner was talking
about moving or shaking the Computer's mouse to encrypt
the files - When Petitioner explained excatly the steps at the
Proffer and explained that because of selecting certain
function within the encrypting program, this function suggests
or require the moving of the mouse in any random ways for
a minute or two because by moving the mouse, the program is
generating a random key encryption "Letters and symbols", the
longer time the movment of the mouse is, the longer
the "generated" encryption key will be, and the less possibility
"statistically" to break this encryption code because simply
a computer would have to guess correctly may be few Hundreds
characters, which would require trillions of attempts, which
till today there is no software that is designed to solve it.
Here, Instead of United State attorney benefiting from the
information - Rather the U.S attorney was more interested in
painting the "terrorist" picture on the petitioner to secure
a conviction and encouraging the Court to give Petitioner
a long sentence.

(47)

Petitioner is challenging the United State attorney's office about the accuracy of the proffer Statements as presented to the Court by U.S attorney / Christine ManueLian.

Petitioner is challenging the U.S. attorneys' office to Provide the recording of the "couple hours" proffer meeting.

For the Court information, There were at Least five Government agents present at the proffer in addition to the U.S. attorney and the Petitioner's attorneys.

(A) In Case of the Goverment claiming that there is no recording of the proffer

— ① This claim would be against the Logic and the Common Sense.

Because, IF the Government really believe that this Case as dramaticly alleged about "International terrorism" & "ISIS" & "Drone technology" & "International Conspiracy", then it would of been recorded (the statements) & In addition to that, given the number of Government agents attending and the Lenthy time, IF Petitioner as alleged by U.S. attorney Confessed to the intent of conducting a terrorist attack, then at least one of the agents would of record it at the Proffer.

— ② This claim would be going a long with the Logic and Common Sense ultimatly because the Government already Know that Petitioner is nothing but an "online Player" and that there is nothing serious in this Case which deserve recording.

(48)

(B) If the Recording of Proffer Exist

- ① If the recording exist and the Government did not presented it to the Court before - It is because the recording of the Proffer will compLetly contradict the Government's alleged Proffer statement Which it represnted to the Court.

- ② If the recording exist - then Petitioner is challenging the U.S. attorney to Submit it to the Court, to Compare it with the statements made by U.S. attorney in Court regarding the Proffer. However, what happend here by the U.S. attorney is not an innovative act, it has been defined in the law by several terms.

① OfficiaL misconduct (1830)

2. An attorney's dishonesty or attempt to persuade a Court or Jury by using deceptive or reprehensible methods.

(Black's Law dictionary. 5th ed. 2016)

② Fraud on the Court (1810)

In a Judicial proceeding, a Lawyer's or party's misconduct So serious that it undermines or is intended to undermine integrity of the Proceeding. (Black's law dictionary. 5th ed. 2016)

③ deceit, n. (19C)

1. The act of intentionally Leading someone to believe Something that is not true, an act designed to deceive or trick

④ Material misrepresentation

"A misrepresentation is material if it "has a natural tendency to influence... the decision of the decision making body to

(49)

which it was addressed". Kungy v. United States, 485 U.S. 759, 770, 108 S. Ct. 1537, 99 L. Ed. 2d 839 (1988) (internal quotation marks and citation omitted).

(5) § 159. Misrepresentation - b. Half truths

A statement may be true with respect to the facts stated, but may fail to include qualifying matter neccessary to prevent the implication of an assertion that is false with respect to other facts. (Restatement (second) of Contracts (1981))

(6) Knowingly and intentionally violating the Petitioner's First Amendment right to have his voice and statements "accurately" reach the Court.

" a government official is shielded from Liability for Civil damages if his conduct did not violate Plaintiff's clearly established right or if it would have been objectively reasonable for the official to believe that his conduct did not violate Plaintiff's rights." Savino V. The City of New York, 331 F. 3d, 63, 71 (2d Cir, 2003)

(7) 18 U.S.C.S § 1623, False declarations before grand jury or Court

The United State attorney mentioned to the Court half of the truth of the Petitioner's Statements from the Proffer which was misleading to the Court, this Suppression of Facts is a deception, specially when these Facts stated by Petitioner has been intentionally concealed in order to make the Judge believe that petitioner admitted to the intent to carry a terrorist attack and

(50)

to the intent required to find the Petitioner guilty on 18 U.S.C 2339(B)(C).

The Prosecutor was bound by duty to disclose the Concealed information and Statements because the Government should Live up to its Commitment as it is the essence of Liberty under the Law.

The harm generated by allowing the U.S. attorney to misrepresent the truth to the Court and to the People cannot be tolerated.

The prosecutor's deception of the Court is more than Just a breach of the contract between her and the Public's trust, It is a breach of the highest order, Breach of trust, The one who is suppose to bring the truth to us, is the one who is using the Power of the Public's trust to deceive the Court and alter the truth Knowingly that the truth is being altered and all that for the personal gain and benefits and self interest instead of the interest of Justice or the interest of the american people.

The Government wrote; " Evidence of Mr. Elshinawy's Proffer Statements ... were directly relevant to the Factors under 18 U.S.C. § 3553 "

The Government here admits that these misrepresented proffer statements prejudiced the Petitioner because the Court toke these statements into Consideration in Forming the Petitioner's sentence as directly relevant to the Factors under 18 U.S.C.

(51)

§ 3553 / Since the claim of " the Court using the proffer statements as relevant to the sentencing factor under 18 U.S.C. § 3553" is not in dispute between the Government and Petitioner – then there is no need to elaborate more on it.

Have the U.S. attorney said the truth about the Proffer Statements – or at Least did not Lie about it – then the outcome of the sentence most Likely would of been different because Fact relevant to 18 U.S.C. § 3553 plays an important rule in shaping the Sentence.

Second / Regarding the Petitioner's attorney's Failure to dispute the accuracy of the Proffer Information.

① After the United State attorney's misrepresentation of the Petitioner's proffer Statements, the petitioner vigoursely objected to his attorney about this complete misrepresentation but attorney did not Follow through.

② There is a very big possibility for the existence of Conflict of interest at the time of the proffer, Because attorney Mr. Treem was under investigation by the United State attorney's office, and possibly there could of been "Favor For Favor" type of thing, Where Mr. Treem would open the way For the prosecutor to secure a Convicition and win arguments in court in exchange of delaying investigation or prosecution of Mr. Treem or in an attempt From Mr. Treem to win the Leniency of the United States

(52)

attorney's office.

It is unclear and suspicious position

Petitioner's attorneys were ineffective for failing to dispute the accuracy of the Proffer information which prejudiced the Petitioner because this information was considerd as facts relevant to 18 U.S.C §3553, which affected the out come of the petitioner's overall sentence.

# GROUND SEVEN

Here, The situation is very similar to what happend in ROBERT McCOY vs. LOUISIANA [2018] 584 US, 138 SCt, 200 L Ed 2d 821, 2018 US LEXIS 2802 In McCoy's case, McCoy's attorney "Larry English" admitted the guilt of his client McCoy despite and over the client's intrasigent objection to that admission.

There are only "few differences" between what Dr. Sageman did and larry English did.

① "Larry English" admitted his client's guilt about a crime that actually happend ((by someone)).

In the Petitioner's case, the Expert admitted to the intent of the Petitioner to commit a crime that never actually happend "the alleged terrorist attack"

② The client "Robert McCoy" actually spoke up in Court to deny this guilt,

In Petitioner's Case, Petitioner was opressed and threatend enough to Keep Silent at the Court Proceedings.

(53)

Now the Similarity is :

① Attorney "Larry English" made this admission of guilt based on Goverment's evidences and not based on McCoy's Confession or even McCoy's Consent to that admission.

In Petitioner' Case, Dr. Sageman made it clear that he made a conclusion that Petitioner intended to carry out some type of unknown terrorist attack based on the evidence from the Government namely "Face book chat" and not based on Elshinawy's Confession to this intent, niether based on his interview with Petitioner, niether with the Petitioner's consent to Epert to be making this admission.

(Note: Even though Dr. Sageman most likely to deny the existence of an "Audio Recording" of the Whole interview he conducted with Petitioner, The Petitioner is assuring the Court that Dr. Sageman recorded the interview.)

- Dr. Sageman's Report's Contradiction and Error :

    Dr. Sageman admits in his overall opinion - that Petitioner is not dangerous in the Criminal Sense.

So, The Petitioner's Expert at the time of meeting with the Petitioner made His assesment that Petitioner was not dangerous in the Criminal Sense as accused.

But, based on Government's "evidence-in-chief" Which is the "Facebook Private chats" the Expert made a conclusion that Petitioner was dangerous before.

(54)

/ Summary of Facts :

①  Based on Dr. Sageman's interview with Petitioner using his Knowledge / Skills / experience to evaluate the Petitioner, it resulted of the openion From Dr. Sageman that Petitioner is not dangerous in the Criminal Sense.

②  Based on the Goverment's presented evidence - then Dr. Sageman assumed that Petitioner was dangerous before.

③  Dr. Sageman ignored the Petitioner's statements on records to the FBI agents that Petitioner never intended to commit any terrorist attack and Rather believed the Government.

/ The scope of Dr. Sageman's Job :

Looking at Dr. Sageman's Job or task he was asked to Provide in the Petitioner's Case,

Dr. Sageman's Job was to evaluate the Petitioner and not not to evaluate the Case.

But here, Dr. Sageman played the jury's role or the Judge's role to evaluate the Case based on evidence presented, Petitioner believe that Dr. Sageman Crossed the scope of his job to evaluate the Petitioner Based on how he sees the Petitioner and not based on how the government is alleging the Petitioner is.

Petitioner's attorney did not impeach this Expert report which contradicts some of attoreny's own Filings in this Case, Also Dr. Sageman made a determination about the

( 55 )

Petitioner's intent against the Petitioner's objection to this intent.

-The Showing of Prejudice:

The harm caused to Petitioner from Expert report is very sever, as the District Court and the Count of Appeals used Dr. Sageman's statement in the Report to assume that Petitioner had the intent at some point in the Past to carry out a terrorist attack, as Dr. Sageman was an Expert on behalf of Petitioner and His statements affected the Court's decision about the enhancement and the sentence imposed on Petitioner.

# GROUND EIGHT

In addition to the Petitioner's allegations in his motion to Vacate, The Government as well in the Response proved more the Petitioner's claim to be true.

The Government wrote: "There was no suggestion that use of prayers equates to bad character, as Mr. Elshinawy allegs. Rather, this change in behavior in conjunction with the rest of the activity at the time was part of what Led up to his arrest in early December"

Here, the Government is explaining two elements of the Probable Cause determination which led up to the arrest of Petitioner:

① The change of behavior

② The rest of the activity

- ①/ Facts: The Petitioner was interviewed and interrogated by FBI agents since July, 2015, No arrest was warranted , Survillance on Petitioner was the type of survilliance which FBI agent in the interview with the associated press admitted that it was "24 Hours - 7 days a week" Survilliance, Still arrest wasn't warranted.

However, the "change of behavior" namely ; the starting to stream islamic prayers was the sign of danger according to the Government's statement in the Government's Response.

- The Government here further explains:

The Government wrote: "In the period immediatly before the defendant's arrest, in addition to accessing ISIS propaganda and beheading videos"

Here, That's deemed by the Goverment to be "rest of the activity" - Watching the News is a Criminal activity in this Strange Case of the Petitioner, Most people in the World seen videos on the News, either on TV or Online about ISIS - Not sure why the Petitioner can not exercise a simple right of watching the News without being accused of Criminal intent to Commit a Crime.

- ② The Government wrote: "In the period immediately before the Petitioner's arrest, in addition to accessing ISIS

(57)

Propaganda and beheading videos, he "also began streaming
audio files of Islamic prayers" ... agent saw this activity
in the days before the defendant's arrest but had not
seen it in the prior months"

Here, the "Streaming audio of Islamic prayers",
According to the Government's method of evaluation in this
Case is: The Petitioner's watching of the news was his
normal behavior, But, in conjuction with the new behavior
of Listening to Islamic prayers — was enough indication for
Probable Cause determination by the Government to seek
arresting the Petitioner.

For Argument Sake / If the Petitioner's change of behavior
was that, Petitioner for example Started the streaming of
audio files of Christian prayers and in Conjuction with
the Same activity the Petitioner is used to do - then it
would not satisfy a Probable Cause to request a warrant
to arrest the Petitioner.

According to any ordinary average muslim Person, Change
of behavior, namely - Starting to Listen to Islamic prayers
"Which was the Quran in Petitioner's case" is deemed to be
a change for better manners, morals, Ethics, and overall behavior
, For Example the Quran Forbids the Killing of innocent
People under any circumstances, Furthermore, The Quran indicates
that the Killing of one innocent person is like the Killing
of all Mankind and the Saving of one life is like the

(58)

Saving of all the Lifes of all man kind.

The Government here, By this Confession about the Facts which it relied on to arrest the Petitioner, put the Government deeper in the position which the Petitioner is accusing the Government of. In the motion to vacate, the Petitioner's attempt to be a "better muslim" by Listening more to "Islamic Prayers" was a change of behavior that was alarming and was treated as "Criminal character" which ended with arresting the Petitioner.

/ The Plea Agreement's Issue :

Regarding the Petitioner's claim that he did not understand that he will be exposed to 68 years in prison by entering this plea; Could be clarified by :-

First / LOGIC

The Petitioner before entering into this plea agreement refused a drafted plea offer to plead guilty to one charge of the indictment, Just because in the plea offer there is a stipulation which states that petitioner can not ask the Court for sentence less than 12 years,

Instead, Petitioner's attorney replaced it with a plea offer and claimed that it was "way better", which is the current Plea agreement in the case that exposes the petitioner for 68 years instead of 20 Years maximum sentence even should the Court apply the enhancement.

(59)

Mr. Simms visted the Petitioner two different times in one day to Convince the Petitioner that pleading To Four charges is the same as pleading to one charge, Mr. Simms in his efforts to Convince the Petitioner explained that the two Plea offers are the Same, except that in the new plea the Government promised not to bring any other Facts into sentencing and that the petitioner can argue For Less than 12 years, Mr. Simms Convincend the petitioner that pleading to the additional three charges in the new plea is Just For records' appearance purpose, also Mr. Simms Convincend the petitioner that there is Some type of agreement with Court or Understanding that the maximum is not going to exceed 20 years, But the sentence will be definitely way Less. With the Corrupt behavior from attorneys which petitioner witnessed First hand, and with the complete misrepresentation and Lies From United State attorney, Petitioner did not put away the possibility that his attorney might have some type of agreement with the Court about the results.
Petitioner at this point knew For Fact that it is not the truth or the Justice that matter to all the Parties involved in his Case, Rather it is the Financial benefits, politics and the personal views of individuals that matter, Just Sounded to the Petitioner Like any third world Country's Corrupt System.
The Drafted Plea offer which was First offer to Petitioner is included in [Exhibit: 2]

( 60 )

## Second / Records

The Government here actually did bring the evidence from the records which Petitioner would need to add as evidence to prove his claim in Ground Eight ; "Since Petitioner was denied access to his own records" ;

The Government wrote that the Court said : " I'm going to pause here for a moment to just make sure, Counsel, that I state this correctly. These periods of incarceration can be imposed consecutive and it doesn't say that here, So I want to be sure we're all on the same page. That's a total exposure of 68 years "

Here, The Court acknowledged that the plea does not mention the maximum possible sentence and even when Court asked about the 68 years maximum possibility - It asked the "Counsel", not the Petitioner.

The Phrase - maximum penalty of 68 years is not mention at all in the plea, The number 68 years is not mentioned. Why an intelligent , rather Just even a reasonable decision from the Petitioner would be to refuse a plea agreement which expose him to maximum of 20 years , even with the enhancement being applied in favor of a plea agreement which expose him to 68 years.

Either the Petitioner was insane , decieved or threaten enough to accept such an offer, Something appears to be very suspicious by the Logic and Common sense which goes against the very fundamental principle that when a Defendant

inters into a plea agreement, The acceptance of agreement
has to be done Knowingly, Intelligently and Voluntarily.
Petitioner, Definitely, Would of gone to trial (even
representing him self) instead of entering into this plea
agreement if it was plainly explained to him or he understood
that he was going to be exposed to 68 years in prison.
Lastly, Petitioner need not to comment about the Federal building's
pictures like the "NIH" because it's sad and unfortunate that Petitioner's
wife's pervious suffering from Cancer and the current Complications
is being mocked in the District Court by showing these pictures
Where Petitioner used to take his wife for medical research and
follow up, and also the mockery of the Petitioner's 7 days
a week all year round the news paper delivery Job by bringing
pictures of his Car full of news paper as admissible evidence
of criminal characters.

Lastly, Here, other than what Petitioner mentioned in his motion
to vacate, Is a, Request For the Court, to Consider, along with
Petitioner's Parents, who are old, so hurt, so far away and being
affected by Petitioner's incarceration, Is the, "Increasingly
suffering" of the Petitioner's wife due to the Petitioner
incarceration [Exhibit "3"].
Finally, Petitioner would like to ask the Court to Consider
that Petitioner's wife is a high risk for the Corona Virus and
Petitioner is the only caregiver available to her.

(62)

## Conclusion

---

- Petitioner, Mohamed Elshinawy, Is asking the Court to :-

  ① Grant the Petitioner's motion to vacate , 28 U.S.C. § 2255.

  ② Grant the Petitioner an Immediate release From the Federal Prison.

  ③ Correct the Records.

  ④ Impose the proper Sanctions on the Government's officials involved in misconducts against petitioner.

  OR
  ⑤ Determine Whatever procedure deemed neccessary to Fix this situation and bring relief to Petitioner From incarceration.

Respectfully Submitted

---

Mohamed Y. Elshinawy

(63)

# DECLARATION

I declare (or certify, verify, or state) under penalty of Pejury that the foregoing is true and correct and this REPLY to the Government's Response to Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on March-22-2021

Executed (signed) on March-22-2021   (Monday)

_____
Mohamed Elshinawy

# CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing REPLY to Government's Response to motion Under 28 U.S.C. § 2255, was mailed, Postage prepaid, to the following:

Clerk, United State District Court
District of Maryland
101 West Lombard Street
Baltimore, MD 21201

_____
Mohamed Elshinawy

(64)